119 F.3d 1393
 71 Empl. Prac. Dec. P 44,906, 97 Cal. Daily
Op. Serv. 5629,
97 Daily Journal D.A.R. 9122
Kathleen A. GEORGE, Plaintiff-Appellant,
v.
Luis S. CAMACHO, personally and in his capacity as Acting
Director and Director of the CNMI Office of Personnel
Management; Agnes M. McPheters, personally and in her
capacity as President of Northern Marianas College; Eugene
A. Santos, personally and in his capacity as Chairman of the
CNMI Civil Service Commission of the Commonwealth of the
Northern Mariana Islands, Defendants-Appellees.
 Nos. 95-17195, 96-15012.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Jan. 24, 1997.*
Decided July 16, 1997.
 
 Pamela Brown, Long & Brown, Oleai, Saipan, MP, for Plaintiff-Appellant.
 Robert B. Dunlap II, Assistant Attorney General, Saipan, MP; Kenneth L. Govendo, Saipan, MP; and Linda M. Wingenbach, Eason and Halsell, Saipan, MP, for Defendants-Appellees.
 Appeal from the United States District Court for the Northern Mariana Islands; Alex R. Munson, Chief Judge, Presiding. D.C. No. CV-94-00026-ARM.
 Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, REINHARDT, KOZINSKI, THOMPSON, O'SCANNLAIN, RYMER, T.G. NELSON, and HAWKINS, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Kathleen A. George appeals from a grant of summary judgment in favor of appellees on her claims of discrimination, breach of fiduciary duty, and intentional or negligent infliction of emotional distress. We took the case en banc to reconsider our rule announced in Commonwealth of Northern Mariana Islands v. Mendiola, 976 F.2d 475 (9th Cir.1992), that litigants in the Northern Mariana Islands are afforded a seven-day extension for filing notices of appeal. We overrule that holding and now hold that all litigants must file their notices of appeal within the time allotted in Federal Rule of Appellate Procedure 4 and Ninth Circuit Rule 26-1. Because we apply our ruling prospectively, we also hold that George's appeal is timely.
 
 I.
 
 2
 Appellant George, a white female, filed suit against the President of Northern Mariana College as well as several members of the Civil Service Commission and the Commonwealth of the Northern Mariana Islands. The suit alleged intentional race discrimination in contravention of 42 U.S.C. §§ 1981 and 1985(3) as well as the violation of George's rights to freedom of association under the First Amendment and due process under the Fourteenth Amendment. George contended, in part, that she was discriminated against because she is white.[1] The district court granted defendants' motion for summary judgment and entered its final order on September 13, 1995. Although Federal Rule of Appellate Procedure 4(a) provides that notices of appeal in civil cases must be filed within 30 days of the date of the entry of judgment, George filed her notice on October 16, 1995, 33 days after that date.[2]
 
 
 3
 In her opening brief to this court, George asserts that her appeal was timely filed pursuant to this court's ruling in Mendiola. There, we held that an appeal from the Northern Mariana Islands that was filed seven days after the generally applicable time limit was timely filed because "[u]nder 9th Cir. R. 26-1, the deadline for filing appeals from the Northern Mariana Islands is extended by seven days." Id. at 480 n. 4. The three-judge panel assigned to hear George's appeal called for review by the en banc court and asked that we overrule the Mendiola holding.
 
 
 4
 Both the majority and the dissent agree that Mendiola was wrongly decided but that it remains the law of this circuit nevertheless, until it is overruled by this court sitting en banc or by the Supreme Court. We diverge only on whether when we overrule Mendiola, as we now do, we must apply our ruling retroactively, so as to render appeals that under the law of this circuit were timely when filed, untimely; if so, we must forfeit George's right to appeal and her interests in her underlying claims without prior notice to her or similarly situated litigants of our change to the rules, or any opportunity to comply with the revised rule.[3] We conclude that we are not compelled to act in so arbitrary and unfair a manner and that we may apply our new ruling prospectively.[4]
 
 II.
 
 5
 Ninth Circuit Rule 26-1 extends the filing deadlines for the districts of Guam and the Northern Mariana Islands "[e]xcept as provided by the order of the court, or by FRAP 26(b) ...." 9th Cir. R. 26-1.
 
 
 6
 Federal Rule of Appellate Procedure 26(b) states that:
 
 
 7
 The Court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but the court may not enlarge the time for filing a notice of appeal....
 
 
 8
 Fed. R.App. P. 26(b). The panel in Mendiola failed to properly read Ninth Circuit Rule 26-1 and Federal Rule of Appellate Procedure 26(b) together. When they are so read, it is clear that we erred in holding that the deadline for filing appeals in cases arising in the Northern Marianas is extended by a period of seven days. The rule announced in Mendiola that provides for such an extension is therefore overruled.[5]
 
 III.
 A.
 
 9
 It is a well-settled principle that this court cannot hear an appeal that was not timely filed, as we have no jurisdiction to do so. See Browder v. Director, Dep't. of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.E.2d 521 (1978). George's appeal, however, was timely filed at the time she filed it. The issue before us, therefore, is whether this en banc decision that shortens the time period for filing notices of appeal from the Northern Mariana Islands shall be applied retroactively so as to render an appeal that was timely filed when filed, untimely.
 
 
 10
 Applying our decision retroactively would be contrary to fundamental principles of fairness and due process of law, and would call into question the very integrity of this court's processes. Announcing a rule that allows litigants a specific period of time within which to appeal and then several years later declaring that we've changed our minds and will not recognize appeals that were filed within the proscribed period would be carrying the "gotcha" principle beyond all previous limits. It would also be wholly unprecedented.
 
 
 11
 We must examine the question before us in context. The Supreme Court has noted that, "[r]etroactivity is not favored in the law." Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). Therefore, there is a strong presumption against retroactive application. See, Landgraf v. USI Film Products, 511 U.S. 244, 264, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). As the Court has forcefully stated, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Id. This principle is of particular importance when time limits are involved and litigants have been advised of the time by which they must decide upon their course of action. When George filed her notice of appeal she did so within the time period afforded her by this circuit. Whether the rule announced in Mendiola was correct or not, history cannot be retroactively reversed so as to change that fundamental fact.
 
 
 12
 Considerations of fairness that presumptively prohibit retroactive application of the law are essential "[i]n a free, dynamic society [where] creativity ... is fostered by a rule of law that gives people confidence about the consequences of their legal actions." Id. For that reason, among others, courts are reluctant to "sweep away settled expectations suddenly...." Id. It would be difficult to imagine a more compelling circumstance for abiding by established legal rules than is presented in the case before us--a case in which we are asked to hold that time limits established by court decisions construing the Federal Rules of Appellate Procedure may be shortened without prior notice to litigants, and that the new time limits may be applied retroactively to pending appeals that were timely filed under our court-announced rule. The consequence of such a holding would be that litigants who complied with our rules by timely filing their appeals in accordance with our instructions would lose their rights to appeal, thereby forfeiting whatever underlying interests may have been affected by adverse district court decisions. Moreover, we are asked to hold that we are compelled to reach that result--a result that would appear to be unconscionable to most reasoning persons whether learned in the law or not.
 
 
 13
 The dissent asserts that because rules governing the time for appeal are jurisdictional we are required to forfeit the rights of any individual who may have filed an appeal during the extended time period we held applicable in Mendiola.[6] The dissent does not argue that such a result would be fair or wise, but rather that our hands are tied by a global sentence in Firestone Tire and Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), subsequently reiterated in Budinich v. Becton Dickinson and Company, 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988).
 
 
 14
 In Firestone, the Supreme Court was faced with the question of whether an order denying a motion to disqualify counsel was final within the meaning of 28 U.S.C. § 1291. The Court held that the order was "not appealable under § 1291 prior to final judgment in the underlying litigation." Id. at 449 U.S. at 379, 101 S.Ct. at 676. Because the "finality requirement of § 1291 is jurisdictional in nature," the Court applied its holding to the case before it. The practical effect of Firestone was that courts of appeals were without jurisdiction to address the question of the validity of disqualification orders until after the trial was completed and a final judgment was entered. Id. In its Firestone opinion, the Supreme Court observed: "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, thus, by definition, a jurisdictional ruling may never be made prospective only." Id. That sentence, on which the dissent's arguments rests, has never been applied as broadly and inflexibly as both its language and our dissenting colleagues suggest--not by the Supreme Court and not by the courts of appeals.[7]
 
 
 15
 Firestone itself concerns a different kind of jurisdictional issue than is present in the case before us. As the Court pointed out, there was never any jurisdiction in the court of appeals over the Firestone interlocutory appeal, because there was no final judgment, a jurisdictional prerequisite to a § 1291 appeal. What underlay the Court's decision in Firestone was the need to ensure that litigants would not engage in piecemeal litigation, clogging the circuit courts with interlocutory appeals. See, e.g. id. at 449 U.S. at 374, 101 S.Ct. at 673. Put another way, the Court wanted to ensure that the exception allowing for certain types of interlocutory appeals was construed as narrowly as possible and did not create a loophole that circumvented the finality requirement of § 1291. Applying the rule retroactively clearly advanced that objective by postponing consideration of pending interlocutory appeals until after final judgment. There was thus no question in Firestone of forfeiting anyone's right to appeal permanently. The circumstances here are entirely different. The order denying summary judgment is unquestionably final under § 1291. Here, the issue involves the length of time the courts will afford litigants within which to decide whether to take the one and only appeal to which they are entitled. Retroactive application of the rule would work a forfeiture of that appeal in the case of all affected litigants. Shortening a time period we previously announced, in order to correct an error that we made, constitutes an essential judicial action, but neither the purposes underlying that action nor the purposes underlying the rule governing times for appeal suggest that applying the change retroactively would advance any legitimate objective.
 
 
 16
 The Court reiterated the Firestone statement regarding the retroactivity of jurisdictional rulings in Budinich v. Becton Dickinson and Co., 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). However, Budinich was also a case concerning finality, as opposed to the proper length of time within which to file notices of appeal following an indisputably final order. Again, the Court stressed the critical nature of the finality determination under § 1291. Budinich obtained a small jury verdict in a case that had been removed from state court. He then timely filed new-trial motions and a motion for attorneys' fees. The district court entered an order denying the new-trial motions and found that Budinich was entitled to attorneys' fees; however, it delayed determining the fee amount until after further briefing. Several months later, well after a final order had been entered on the merits, the district court issued its order concerning the attorneys' fees. Twenty-nine days after the attorneys' fees order was entered, Budinich filed his notice of appeal as to both the merits and the attorneys' fees. The Supreme Court held that the order denying his motions for a new trial was a final judgment on the merits under § 1291 and that the notice was therefore not timely except as to the attorneys' fees. In its ruling, the Court emphasized that its holding did not change the applicable law retroactively. It stated: "[w]e have all but held that an attorney's fees determination" is "[a] question remaining to be decided after an order ending litigation on the merits" and "does not prevent finality." Id. at 486 U.S. at 199, 108 S.Ct. at 1720. Unlike the rule before us, the rule applied to Budinich was a rule of finality that should have been apparent from the Court's previous decisions. The Budinich decision did not conflict with or overrule any previously established law; nor did it subject Budinich to a rule that was different from the rule in effect at the time he acted.[8] Certainly, the new rule did not wipe out any rights he had established under a former version of the rule.
 
 
 17
 Despite the sweeping general language in Firestone, the rule mandating retroactivity for jurisdictional rulings has not been applied in an absolute or inflexible manner. For instance, the Supreme Court explicitly refused to make its jurisdictional ruling in Northern Pipeline v. Marathon Pipe Line, 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982), retroactive. The four justice plurality was expressly joined in that part of its holding by then-Justice Rehnquist and Justice O'Connor. In Marathon, the Court held that its decision, which found unconstitutional the purported grant of jurisdiction to bankruptcy courts would not be applied retroactively, although this holding meant not only that the decision was not applied to the case before it, but also that thousands of judgments that had been adjudicated by courts that were without jurisdiction would remain valid and enforceable. In determining that its ruling would be applied "only prospectively," the Court applied the three-part Chevron Oil v. Huson test. Id.[9] As we will explain further,[10] the circuit courts have followed the Supreme Court's lead and found exceptions to the Firestone principle where common sense and reason so dictate. In such instances, they, too, have applied the Chevron test. Among the circuits that have concluded that the Firestone principle is not all-inclusive is this circuit, and we did so in a case that involved issues similar to the ones before us today.[11] Perhaps even more important, no court has ever applied a change to a procedural rule in a manner that serves to forfeit a litigant's substantive rights when that litigant had fully complied with the provisions of the rule as it existed at the time he acted. We are now asked to do so for the first time in this case.
 
 B.
 
 18
 The requirement of retroactive application of jurisdictional rulings is rooted in the assumption that such "[a]pplication ... usually 'takes away no substantive right but simply changes the tribunal that is to hear the case,' " Landgraf v. USI Film Products, 511 U.S. 244, 274, 114 S.Ct. 1483, 1502, 128 L.Ed.2d 229 (1994) (quoting Hallowell v. Commons, 239 U.S. 506, 508, 36 S.Ct. 202, 202, 60 L.Ed.2d 409 (1916)),[12] or alternatively, as in Firestone, that the ruling simply postpones the time at which the issue will be heard.[13] Thus, no existing right or interest is ordinarily destroyed by making jurisdictional rulings retroactive. Here, however, shortening the time within which to appeal retroactively would neither simply result in the transfer of jurisdiction to another tribunal nor merely serve to postpone the claim until the completion of some other event; instead, it would completely destroy the right to appeal in a class of cases over which the federal courts indisputably have continuing subject matter jurisdiction.[14]
 
 
 19
 The instant case presents the specific question of whether when we change our interpretation of a Federal Rule of Appellate Procedure that is characterized as jurisdictional we must do so retroactively.[15] In Landgraf v. USI Film Products, the Supreme Court addressed the issue of the retroactivity of the Federal Rules of Civil Procedure. 511 U.S. at 279 n. 29, 114 S.Ct. at 1502 n. 29. The Court observed that "[o]ur orders approving amendments to federal procedural rules reflect the common-sense notion that the applicability of such provisions ordinarily depends on the posture of the particular case." Id. Common sense would dictate that rules shortening times for filing anything, including notices of appeal, are to be applied prospectively so as not to forfeit the rights of litigants to file otherwise proper pleadings or papers in cases in which the court has subject matter jurisdiction. Such an approach would appear necessary if we are to maintain the appearance that we operate the judicial system in accordance with elementary concepts of fairness. Certainly, no one would suggest that if the Supreme Court were to approve a change in the Federal Rules of Appellate Procedure shortening the time for filing notices of appeal, it could or would make the change retroactive for no rational justification would support making the change in a manner that would strip a class of persons with pending appeals of the right to have those appeals heard simply because the rule that was in effect at the time they filed was subsequently amended. Indeed, any attempt to use the rulemaking process to make a change of the type before us retroactive would clearly be arbitrary and capricious and would, at the least, raise serious constitutional issues.
 
 
 20
 Our analysis with respect to a change in the Federal Rules of Appellate Procedure themselves informs the approach we must take in the present case. If a change in the rules themselves would necessarily be "prospective," we can conceive of no reason why a change in the construction of a rule must necessarily be "retroactive." A change in the Federal Rules that reduced a 30-day period for appeals in the federal courts to 20 days would change a jurisdictional requirement in the same manner as would a holding of this court that reduced the time for appeals from the Northern Marianas by seven days. That the source of the change may be different is not important. What matters is that, regardless of who is responsible for the change, the interests and concerns of both courts and litigants are the same in each instance. Prospective rather than retrospective application of the changed rule is equally necessary in both cases.
 
 
 21
 We need not consider here the extent of Congress' authority to strip federal courts of jurisdiction over various types of pending cases or of federal courts to declare retroactively that we have no jurisdiction over certain types of cases. Such issues involve changes in the courts' subject matter jurisdiction. Today's opinion is limited to the question whether, when subject matter jurisdiction exists, courts must apply retroactively a change in the interpretation of a procedural rule (albeit jurisdictional in nature), even though the effect would be to forfeit the substantive rights of a class of litigants. The dissent cites no case in which a court has ever answered that question in the affirmative, and we certainly are aware of none.[16]
 
 
 22
 The result we reach here is dictated under the three-part Chevron test that is generally applicable when deciding whether judicial decisions should be applied retroactively or prospectively. Chevron, 404 U.S. at 106-07, 92 S.Ct. at 355. First, we consider whether a decision establishes a new principle of law. If so, it may be applied prospectively. Here, our decision not only establishes a new rule, it repudiates the prior erroneous one. Second, we examine whether retroactive application will advance the new holding. Here, it unquestionably would not. Rules that govern the times by which appeals must be filed are intended to provide both certainty and guidance. Retroactive changes in established rules do not advance that cause. Finally, we look to fundamental principles of fairness. Here, no one can seriously deny that it would be profoundly unjust to apply our holding retroactively and subject to forfeiture the rights of a class of litigants who were entitled to govern their conduct in accordance with our prior rule. Thus, the Chevron factors uniformly weigh heavily in favor of prospective application.
 
 C.
 1.
 
 23
 As we have previously stated, applying our opinion prospectively is not only consistent with Chevron and the Supreme Court's landmark Marathon decision but also with the controlling precedent in this circuit and in the two other circuits that have addressed similar questions. This circuit, along with the Seventh and the Tenth, has expressly declined to apply the Firestone principle in circumstances similar to those before us--specifically, where court decisions that change the time for various filings would, if applied retroactively, bar consideration of the merits of cases that, but for the change in the law, would in all respects be timely.
 
 
 24
 In Holt v. Shalala, 35 F.3d 376 (9th Cir.1994), we explicitly rejected the premise that the Firestone principle must be applied in all cases in which a new ruling is jurisdictional. There, we held that the new ruling in question must be applied prospectively whether or not it was jurisdictional in nature.[17] The prior rule provided that prevailing social security disability litigants could apply for attorneys' fees under the Equal Access to Justice Act within thirty days of the time that they began to receive benefits following remand from the district court. A Supreme Court decision, however, changed that rule, and required that applications be filed within thirty days after the remand order itself. Thus, if the changed rule were applied retroactively, litigants who, under the earlier version of the rule, still had time left within which to file their claims would lose the right to do so without prior notice. We declined to apply the change to the rule retroactively, stating that "Firestone did not address a rule like [this one], which would foreclose all review in a class of cases." Id. at 381.
 
 
 25
 In Holt, we expressly relied on the Seventh Circuit's decision in Snyder v. Smith, 736 F.2d 409, 415 (7th Cir.), cert. denied, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). In Snyder, the Seventh Circuit also explicitly refused to apply the Firestone principle. It held instead that a jurisdictional ruling it had recently issued must be applied prospectively so that its review of a group of cases would not be peremptorily foreclosed. Id. Retroactive application of the new jurisdictional decision would have prevented litigants who had complied with the court's rules in effect at the time arbitrations were conducted from appealing the district court orders compelling those arbitrations. In its jurisdictional decision, the Seventh Circuit had adopted a new requirement that changed the time for filing appeals in arbitration cases. The new rule provided that litigants must appeal orders compelling arbitration before instead of after the arbitration proceeding is held. The court held that "[t]he effect of applying the [new] decision ... retroactively here would be to deprive the appellant of any opportunity to present his claims to this court for review." Id. at 415. In declining to apply Firestone, the court noted that "[t]he [Supreme] Court did not address the issue of whether an appellate court must dismiss the appeal when a party is ... foreclosed from ever raising his issues in the appellate court." Id.
 
 
 26
 In Pettyjohn v. Shalala, 23 F.3d 1572 (10th Cir.1994), the Tenth Circuit reached the same result we subsequently did in Holt. The factual and legal circumstances of the two cases are similar. Although the Tenth Circuit recognized that "after [the Supreme Court's holding], there is no doubt that plaintiff's fee application should have been filed within thirty days of the finality of the district court's remand order," Pettyjohn, 23 F.3d at 1575, it concluded that the merits of the application must be considered. The Tenth Circuit held that retroactive application of the new jurisdictional rule would frustrate the purpose of the Equal Access to Justice Act. Id.
 
 
 27
 In Holt we specifically relied upon the decisions of the Seventh and Tenth Circuits in Snyder and Pettyjohn when we stated that "[w]e follow the Seventh and Tenth Circuits in concluding that we are not required to apply jurisdictional rulings of this type retroactively." Holt, 35 F.3d at 382. The common-sense principle that underlies the holdings of the Seventh and Tenth Circuits, as well as our own, is that new rulings changing the time for filing cannot be applied retroactively so as to strip litigants of claims that are otherwise timely. Firestone's generalized and all-inclusive statement notwithstanding, courts do not apply new jurisdictional rules retroactively under such circumstances. In all three circuit court cases that considered issues similar to the one before us today had the Firestone principle been applied litigants who had acted in a manner that complied with the rules governing time for filing that were in effect at the time they acted would have lost their substantive rights simply because of a subsequent change to those rules--a change with which they never had the opportunity to comply. In all three cases the circuit courts found the Firestone principle inapplicable and concluded that prospective rather than retroactive application of the new decision was required. Of special importance, the issues in all three cases mirror precisely the issues before us, in that in each case the change involved a court decision that changed the court's prior interpretation of a jurisdictional filing requirement.
 
 2.
 
 28
 Our dissenting colleagues appear to recognize, to some degree, that the federal courts that have actually considered whether a change in procedural rules compels us to strip a class of litigants of substantive rights retroactively have answered that question with a uniform "no." Initially, the dissent strives valiantly to maintain the fiction that once a ruling is determined to be jurisdictional it must be applied retroactively, and that no discretion exists to do otherwise. It subsequently all but concedes, however, that courts have not infrequently looked to whether the old rule is one on which parties may justifiably rely, and that the Supreme Court itself has concluded that exceptions to the rule of retroactivity may be made for practical reasons. Of course if courts may make exceptions, as the Supreme Court and the courts of appeals have unquestionably done, then the Firestone principle is indeed not absolute and inflexible. Rather, the question becomes, "under what circumstances should exceptions to the general rule be made?"We take our guidance from our own precedent in Holt and from the precedents in the two other circuits that have considered similar questions; the principles that govern those cases are directly applicable here, and they require that our decision, like the others, be applied prospectively. Faced with the necessity of confronting how the courts have actually treated Firestone, the dissent resorts to a novel approach--one that misconceives the nature of the reliance arguments alluded to in some of the cases. First, the dissent examines the particular facts of George's case to see if she actually relied on the rule in effect at the time she filed her notice of appeal. That is not a proper inquiry, however. The question we must answer requires an examination of the rule itself, not of George's conduct.[18] What we are required to decide is whether the new rule must be applied retroactively to a class of litigants. We are no longer free to give one answer in the case of George and another in the case of other litigants. If we apply the new rule set forth in this opinion in George's case, we must apply it in all Northern Mariana cases, both civil and criminal. See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74 (1993) (holding that if rule is applied to case in which it is announced, it must be applied to all pending cases). For that reason, we look to the potential effect of the new rule on the affected class of litigants, not to what motivated George to file her appeal in a manner that complied with our then-existing rule.
 
 
 29
 Next, in its final fall-back argument, the dissent asserts that few, if any, litigants in the Northern Marianas actually filed during the extended time period. Whether or not they did is no more appropriate a subject for inquiry than what George's motivation was. While this case is somewhat unusual in that the rule we are changing is limited to a particular geographic area from which comparatively small numbers of appeals are filed, the legal principles by which we determine whether a change to our interpretation of a rule is retroactive or prospective must be the same regardless of the size of the geographic area involved. Almost all of our rules are circuit-wide and cover the nine western states as well as Guam and the Northern Mariana Islands. In the normal case, we could not possibly survey all the appeals or filings in the circuit in order to determine how many of the appellants complied with the former rule but not with the proposed change.[19] Moreover, the class of litigants potentially affected by the retroactive application of a time limits rule cannot be determined at the time we order the change. There will always be, inter alia, an indeterminable number of persons whose time for filing under the old rule has not yet run but who would be precluded from filing if the new rule were held to apply to them retroactively. Thus, we cannot determine in advance the number of cases that would be affected by a retroactive application of our decision.
 
 
 30
 Quite apart from these practical problems, the dissent's approach misperceives the nature of our inquiry, which must be an objective one in which we consider whether making a change retroactive would advance the purposes of the new rule and serve fundamental principles of fairness, or whether it would have the opposite effects.[20] We must look to the nature of the new rule--its purpose and its intended effect. Such is the analytical method that Chevron requires.
 
 
 31
 Rules are intended to provide certainty and to guide parties' actions.[21] Making a rule shortening time for filing retroactive is inconsistent with both of these objectives. The ordinary processes of the law and the interests of justice are far better served by requiring courts to determine by objective standards--by examining the nature of the rule itself--how the type of change their decision will work should be made: prospectively or retroactively. The alternative suggested by the dissent is not only analytically unsound but wholly impractical.[22]
 
 Conclusion
 
 32
 No court has ever held that appeals that were timely filed under the law in effect at the time of the filing may retroactively be deemed untimely. The time limits announced in the Federal Rules, as interpreted by the courts of appeal, must be adhered to not only by the litigants, but by the courts. If courts make errors in explaining time limits, they must correct them at the earliest opportunity, but such corrections must be made in a manner that does not call into question the integrity of the court's processes or the stability or reliability of its orders. To propound a rule that prescribes a period of time within which litigants are free to appeal, and then to determine subsequently that the rule is erroneous and dismiss appeals that complied with it when filed, would undermine confidence in the judicial system. Moreover, contrary to the very objectives of a fixed time period for filing, applying our changed rule retroactively would unsettle matters that had already been settled, cast into doubt the practice of relying on the court's construction of the federal rules, and penalize parties whose conduct faithfully conformed to our determinations.
 
 
 33
 Our Mendiola rule, incorrect though it may be, gave the class of Northern Mariana litigants a seven-day extension to file their notices of appeal. Because George filed her notice of appeal in a civil action 33 days after the entry of final judgment by the district court, she met the deadline under the then-applicable law of our circuit. Her appeal is timely.
 
 
 34
 We hold that litigants in the Northern Mariana Islands must file notices of appeal within the time allotted pursuant to Federal Rule of Appellate Procedure 4 and Ninth Circuit Rule 26-1. The holding in Mendiola adopting a seven-day extension in such cases is overruled. Our ruling will apply prospectively only. The appeal is deemed timely filed and the case is returned to the panel for an adjudication on the merits.
 
 
 35
 APPEAL TIMELY FILED.
 
 
 36
 T.G. NELSON, Circuit Judge, with whom Judges KOZINSKI, THOMPSON, O'SCANNLAIN, and RYMER join, dissenting:
 
 
 37
 Jurisdiction is not a matter of discretion. It is axiomatic that when we determine that we do not have jurisdiction to hear an appeal, we cannot then proceed to decide the merits of that appeal. Because the majority fails to follow clearly applicable Supreme Court precedent regarding the retroactive application of jurisdictional decisions, we respectfully dissent.
 
 I.
 
 38
 Because the procedural posture of this case is determinative of its outcome, we add the following facts.
 
 
 39
 The district court entered its final judgment in this case on September 13, 1995. George filed her notice of appeal on October 16, 1995, the thirty-third day after the district court's final judgment. On October 24, 1995, forty-one days after the district court's final judgment, George moved the district court for an extension of time to file her notice of appeal, citing Fed. R.App. P. 4(a)(5) (regarding excusable neglect) and Ninth Circuit Rule 26-1. In George's memorandum of law accompanying her motion for an extension of time, her attorney noted that she had "conducted research on the issue, but has found no case law interpreting LR 26-1." In George's reply memorandum to Camacho's opposition to the motion for an extension of time, her attorney argued: "No court has ever interpreted or applied LR 26-1. Counsel for plaintiff thus had no case law or other authority which might have assisted her construction of LR 26-1. Counsel's interpretation of LR 26-1 was based solely on her reading of that rule." (Emphasis added.) After a hearing, the district court denied the motion on November 24, 1995, concluding that Ninth Circuit Rule 26-1 was inapplicable to the thirty-day limit for filing notices of appeal.
 
 
 40
 On December 4, 1995, eighty-two days after the district court's final judgment, George moved the district court for reconsideration of its order denying an extension of time to file the notice of appeal, citing the "newly discovered case" of Commonwealth of Northern Mariana Islands v. Mendiola, 976 F.2d 475 (9th Cir.1992), and our erroneous footnote therein.[1] On the same day, December 4, 1995, the district court denied the motion for reconsideration. On December 5, 1995, the district court issued an amended order denying George's motion for reconsideration.
 
 
 41
 We agreed to hear the matter en banc in order to correct a misstatement of the law in our footnote jurisprudence.
 
 II.
 
 42
 We certainly agree with the majority that our footnote in Mendiola interpreting Ninth Circuit Rule 26-1 to extend the deadline to appeal for litigants from Guam and the Northern Mariana Islands was incorrect and must be overruled. Notices of appeal in civil cases must be filed within thirty days after the date of entry of the judgment. Fed. R.App. P. 4(a)(1). George attempts to identify an exception to this requirement by citing Ninth Circuit Rule 26-1, which states:
 
 
 43
 Except as provided by order of the court, or by FRAP 26(b) and 31, all deadlines for filing set forth in FRAP or these rules are extended by 7 days in cases arising from the Districts of Guam and the Northern Mariana Islands.
 
 
 44
 Ninth Circuit Rule 26-1 (emphasis added). Fed. R.App. P. 26(b) provides:
 
 
 45
 Enlargement of time. The court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time; but the court may not enlarge the time for filing a notice of appeal, a petition for allowance, or a petition for permission to appeal.
 
 
 46
 Fed. R.App. P. 26(b) (emphasis added). These rules are clear and unambiguous, whether they are read singly or together. Ninth Circuit Rule 26-1 does not allow an extension of time for filing a notice of appeal from the Districts of Guam or the Northern Mariana Islands beyond the thirty days mandated by Fed. R.App. P. 4(a)(1).
 
 
 47
 George points to this court's opinion in Commonwealth of Northern Mariana Islands v. Mendiola, 976 F.2d 475 (9th Cir.1992), as authority for the view that Circuit Rule 26-1 grants a seven-day extension for the filing of notices of appeal in cases originating in the Northern Mariana Islands.[2] In footnote four, we said: "Mendiola's appeal was filed on January 24, 1991, but was not date stamped until January 28, 1991. Under Ninth Circuit Rule 26-1, the deadline for filing appeals from the Northern Mariana Islands is extended by seven days." Id. at 480 n. 4. This statement is directly contrary to the clear and unambiguous language of Ninth Circuit Rule 26-1 and Fed. R.App. P. 26(b). The majority wisely corrects our mistake in Mendiola by overruling that case's interpretation of these rules.
 
 III.
 
 48
 This conclusion does not end the inquiry, however. Where we differ with the majority is in deciding whether our holding today applies retroactively, and thus to the case before us, or whether it applies prospectively only. We would conclude that this jurisdictional holding applies retroactively and therefore requires the dismissal of George's appeal for lack of jurisdiction.
 
 
 49
 There can be no doubt that the thirty-day time limit imposed on the filing of notices of appeal by Fed. R.App. P. 4(a)(1) is "mandatory and jurisdictional." Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). See also Fallen v. United States, 378 U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L.Ed.2d 760 (1964); Coppedge v. United States, 369 U.S. 438, 442, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962); United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960). As the Supreme Court noted in Browder:
 
 
 50
 The purpose of the rule is clear: It is "to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands. Any other construction of the statute would defeat its purpose."
 
 
 51
 Browder, 434 U.S. at 264, 98 S.Ct. at 560 (quoting Matton Steamboat Co. v. Murphy, 319 U.S. 412, 415, 63 S.Ct. 1126, 1128, 87 L.Ed. 1483 (1943)).
 
 
 52
 Because the timing of an appeal has jurisdictional consequences, we must apply today's holding retroactively. "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).[3] We are required to dismiss this appeal regardless of whether or not today's decision works a significant change in the law. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988).[4] The rule that a civil appeal must be filed within the time limit set by law after the entry of the final judgment does not reside in an arcane or shadowy corner of the law; it is a basic, fundamental rule which every law student learns in the first year of law school. A regular, uniform application of this rule preserves the operational consistency of the law governing appeals because "[c]ourts and litigants are best served by the bright-line rule, which accords with traditional understanding." Id. at 202, 108 S.Ct. at 1721.
 
 
 53
 It does not affect our analysis that we are correcting an error in our jurisprudence by overruling prior precedent. In Firestone, the Court was faced with the question of whether a district court's denial of a motion to disqualify counsel was a final order appealable under 28 U.S.C. § 1291. Firestone, 449 U.S. at 369, 101 S.Ct. at 670. In correctly concluding that such orders were not appealable, the Eighth Circuit had "reconsidered and overruled" its consistent line of prior decisions holding that such orders were immediately appealable under § 1291. Id. at 372, 101 S.Ct. at 671. Nevertheless, the Eighth Circuit, "in fairness to the appellant in the instant case," reached the merits of the challenged order, applying its decision prospectively only. Id. at 372-73, 101 S.Ct. at 671-72.
 
 
 54
 The Supreme Court agreed with the Eighth Circuit's decision on the finality issue, but rejected its justification for non-retroactive application, explaining that the Eighth Circuit's fairness approach "overlooks the fact that the finality requirement embodied in § 1291 is jurisdictional in nature." Id. at 379, 101 S.Ct. at 676. The appeals court was not allowed to conclude that § 1291 did not permit jurisdiction in the case and then proceed to decide the merits of the appeal. "If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over." Id. As a jurisdictional ruling, it had to be applied to the case being decided.[5]
 
 
 55
 It also does not affect our analysis that the retroactive application of today's decision will completely bar George's opportunity for appellate review of the merits of her claims. The "question ... of forfeiting anyone's right to appeal permanently" (maj. op. at 1398) that was left open in Firestone was answered in Budinich. In Budinich, the petitioner filed various post-trial motions, including motions for a new trial and for attorney's fees. On May 14, 1984, the district court denied all of the petitioner's motions for a new trial, but requested supplemental briefing and documentation on the motion regarding attorney's fees before making a final decision. Budinich, 486 U.S. at 197, 108 S.Ct. at 1718. The district court issued its final order concerning attorney's fees on August 1, 1984. On August 29, 1984, the petitioner filed a notice of appeal. Id. at 198, 108 S.Ct. at 1719.
 
 
 56
 The respondent filed a motion to dismiss the appeal, arguing that the judgment was final and appealable when the district court denied the petitioner's motions for a new trial on May 14, 1984. Id. Therefore, the argument went, the petitioner's appeal on the merits of the new trial motions was untimely because the notice of appeal had not been filed within thirty days of the final judgment. The only issue eligible for appellate review was the timely appeal of the district court's decision on attorney's fees. The Supreme Court unanimously agreed with the respondent that "an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final" and immediately appealable under § 1291. Id. at 202, 108 S.Ct. at 1721. Because the resolution of the question had "jurisdictional consequences," the Court, citing Firestone, applied its decision retroactively and held that "the Court of Appeals was without jurisdiction to review the decision on the merits." Id. at 202-03, 108 S.Ct. at 1721-22.[6] As a result, the merits of the petitioner's untimely appeal challenging the final judgment of the district court, like George's untimely appeal of the district court's final judgment in this case, were completely barred from appellate review.
 
 
 57
 In this case, we are presented with both of these elements; applied retroactively, today's decision overruling precedent would completely bar George's opportunity for appellate review of the merits of her claim. The Supreme Court's opinion in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), neither prevents the retroactive application of today's decision nor justifies its prospective-only application. In Northern Pipeline, the Court concluded that a broad congressional grant of jurisdiction in the Bankruptcy Act of 1978 was unconstitutional because it violated Article III by improperly vesting non-Article III judges with Article III jurisdiction. Id. at 87, 102 S.Ct. at 2879. The Court declined to apply its decision retroactively because it "would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts." Id. at 88, 102 S.Ct. at 2879. "To do otherwise would have created chaos in the bankruptcy system and the Court expressly gave Congress a time certain by which to fix the constitutional problem." UNR Industries, Inc. v. United States, 962 F.2d 1013 (Fed.Cir.1992) (en banc), aff'd sub nom. Keene Corp. v. United States, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).
 
 
 58
 The decision in Northern Pipeline involved "an unprecedented question of interpretation of Art. III." Northern Pipeline, 458 U.S. at 88, 102 S.Ct. at 2880. The question we are presented with in this case bears no such haunting overtones. Today, we are merely correcting an obviously erroneous interpretation of Ninth Circuit Rule 26-1 that appeared in an opinion on which no civil litigants have ever relied.[7] The majority's fatal analytical flaw is its treatment of Northern Pipeline as the ordinary rule and Firestone and Budinich as the exceptions to that rule. The reality is precisely the opposite. Firestone and Budinich represent the ordinary rule that jurisdictional decisions must be applied retroactively. Northern Pipeline presented a unique set of circumstances, requiring an exception. Bankruptcy litigants prior to the Supreme Court's decision in Northern Pipeline had no choice but to go to the courts which Congress had vested, unconstitutionally as it turned out, with jurisdiction to hear their cases.[8] George was not left without a choice here; she could easily have filed her notice of appeal within the thirty days mandated by Fed. R.App. P. 4(a)(1). No prior statute, rule, or decision of this court or any other court prevented her from complying with the plain requirements of Rule 4(a)(1).
 
 
 59
 There is a similarity between this case and the decision in UNR Industries, 962 F.2d 1013. In UNR Industries, the Federal Circuit interpreted the phrase "has pending" in 28 U.S.C. § 1500, defining the jurisdiction of the United States Claims Court, in the face of numerous "judicially created exceptions and rationalizations" causing the statute to be "riddled with unsupportable loopholes." Id. at 1021. Rejecting "appellants' arguments that we continue the charade that section 1500 has become and engraft another exception on it," id. at 1021, the court applied its interpretation of § 1500 retroactively, having the effect of completely barring review of the merits of the appeal. Id. at 1025. Nevertheless, following Firestone, the court felt compelled to apply its decision retroactively "even if the parties otherwise may incur hardship." Id. Addressing Northern Pipeline, the court noted: "[T]here is a significant difference between the reliance on a clear congressional grant of jurisdiction in Northern Pipeline, and the activities of these appellants who were trying to circumvent section 1500." Id.
 
 
 60
 What we are faced with in this case is a last-ditch attempt by George's attorney eighty-two days after the district court's final judgment to justify the late notice of appeal once the mistake was realized. The district court wisely rejected the first justificatory attempt to rely on Ninth Circuit Rule 26-1. George's reference in the motion for reconsideration to the "newly discovered" fourth footnote in Mendiola a full eighty-two days after the district court's final judgment was little more than a vain attempt to circumvent the clear requirements of Fed. R.App. P. 4(a)(1). We decline to equate these circumstances with the unique constitutional quandary faced by the Supreme Court in Northern Pipeline. George's appeal should be declared untimely.
 
 IV.
 
 61
 We believe that the majority commits a serious mistake when it conflates the retroactivity analysis traditionally applied to statutes with the retroactivity analysis appropriate to jurisdictional decisions. None of the cases the majority cites for the general discouragement of retroactivity in the law applies to jurisdictional decisions. The majority quotes the Supreme Court's general statement in Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that "[r]etroactivity is not favored in the law" (see maj. op. at 1396), but conveniently fails to quote the sentence immediately following: "Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Id. (emphasis added).
 
 
 62
 The majority commits a similar mistake when citing Landgraf v. USI Film Products, 511 U.S. 244, 264, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994), for the proposition that "there is a strong presumption against retroactive application." (See maj. op. at 1396.) The Supreme Court made clear more than seven times in Landgraf that it was addressing "statutory retroactivity." See id. at 266, 270, 272, 274, 275, 277, 285, 114 S.Ct. at 1498, 1500, 1501, 1502, 1503, 1504, 1508 (emphasis added). These cases, from which the majority draws its policy analysis to support its conclusion that the retroactive application of jurisdictional decisions is optional and discretionary rather than mandatory, are simply inapplicable outside the context of "congressional enactments" or "administrative rules."[9]
 
 
 63
 There are quite different considerations at work in jurisdictional decisions like the one we make today. For over half of this century, the rule that civil litigants must file their notices of appeal within thirty days of the district court's final judgment has stood unchanged. The fundamental purpose of this jurisdictional rule is to bring finality to litigation, "to advise prospective appellees that they are freed of the appellant's demands." Matton Steamboat Co. v. Murphy, 319 U.S. 412, 415, 63 S.Ct. 1126, 1128, 87 L.Ed. 1483 (1943). Therefore, considerations of "fundamental principles of fairness" (maj. op. at 1396) weigh heavily on the side of Camacho, the appellee in this case, as well. George, like all losing civil litigants, had the opportunity to comply with the clear mandate of Fed. R.App. P. 4(a)(1): file your appeal within thirty days of the district court's final judgment or forfeit your right of appeal. She failed to do so, despite the fact that her attorney must have been aware of the rule and knew the penalty involved for failing to comply. This situation is not analogous to the enactment of a statute requiring new or different expectations in order to comply with its terms, and the discretionary considerations involved in the retroactivity analysis with regard to statutes that are silent on that issue do not apply here.
 
 CONCLUSION
 
 64
 We do not agree with the majority that Supreme Court precedent allows us to say in one breath, "We don't have the legal authority to hear these types of cases," and then in the next breath say, "But we're going to hear this one anyway." That logic, not the retroactive application of jurisdictional decisions, defies common sense. Jurisdiction is the lifeblood of the judicial system; it provides the thread that regulates the operational consistency necessary for the orderly resolution of legal disputes. A court at any level in the judicial system, state or federal, that declares itself to be without jurisdiction over a particular kind of case, but then decides the merits of that very kind of case presently before it commits a logical fallacy in the highest form. We refuse to accept this non sequitur. We respectfully dissent.
 
 
 65
 KOZINSKI, Circuit Judge, with whom O'SCANNLAIN, Circuit Judge, joins, dissenting.
 
 
 66
 While the majority is wrong for the reasons well explained in Judge Nelson's dissent, I write to respond to the opinion's overblown rhetoric. This case is not about "fundamental principles of fairness and due process of law," maj. op. at 1396, nor would rejecting George's appeal "call into question the very integrity of this court's processes." Id. See also maj. op. at 1397, 1398, 1399, 1400, 1401, 1402 (references to "rights"); maj. op. at 1396, 1397, 1400, 1401, 1403 (references to fairness).
 
 
 67
 Here's what this is all about: In Mendiola we made a mistake--we misinterpreted Ninth Circuit Rule 26-1 as adding seven days to the time for filing a notice of appeal. We have now corrected the error; the only question is how much disruption we are going to let it cause. A fair and sensible solution would be to give the benefit of the error to anyone who actually relied on it. Period. This would balance appellees' interest in finality with the reliance interest of those appellants who followed our misstatement in Mendiola.
 
 
 68
 Appellant here did not rely on Mendiola. Had she done so, she would have been entitled to file her notice of appeal under a theory of excusable neglect; what, after all, could be more excusable than relying on a clear pronouncement of the court of appeals? But George's lawyer was not aware of Mendiola when she filed the notice of appeal; she merely goofed. Thus the endless pages of sanctimonious twaddle about preserving George's "rights" and avoiding some grave injustice should fool no one. George had no right to file a notice of appeal after the time allotted to her by statute had expired; at that point it was Camacho who had acquired a right--the right, embodied in the rules of appellate procedure, to have a judgment become final because a notice of appeal was not filed within the time specified therein.
 
 
 69
 While my colleagues lavish a small mountain of words on George's supposed rights, not once do they acknowledge that there are two parties to this case or that extending George's right to appeal necessarily denies Camacho's right to have the case come to an end. George missed her filing deadline, and did so for no legitimate reason. After she was jurisdictionally barred--and after Camacho was entitled to treat the judgment as final--George's lawyer pulled a rabbit out of a hat by finding a case we all agree was wrong, a case no one knew about at the time the parties' rights were settled. Talk about the "gotcha principle"! Maj. op. at 1396. Camacho now has to step back onto the litigation treadmill and incur the expense and strain of a delayed appeal. And for what? To soothe the majority's one-sided sensibilities. The result we reach today is supported by neither law nor justice; it rests entirely on air, and not cold air, either.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 [1]
 We leave the merits of the appeal to the three-judge panel to which it was originally assigned
 
 
 [2]
 George then applied to the district court three times for an extension of time to file a notice of appeal. The district court denied all three requests
 
 
 [3]
 The dissent refers to our "footnote jurisprudence." We agree that new rules and holdings should be announced in the text of our opinions rather than in footnotes. The panel to which this case was assigned concluded, however, that the convening of an en banc court was required in order to overrule our holding in Mendiola affording Northern Mariana Island litigants an additional seven days within which to appeal. The active members of this court agreed and we then drew eleven judges and assigned them the task of reviewing our earlier decision on this point. The dissent does not appear to disagree with the need for convening an en banc court or the procedure the en banc court followed. Rather, it simply disapproves of the majority's holding that retroactivity principles do not require courts to make rules shortening the time for appeal retroactive
 
 
 [4]
 To be more specific, with respect to the Northern Mariana Islands the time for appeal set forth in this opinion shall be applicable in all instances in which the time to appeal commences to run on a date subsequent to the date hereof
 
 
 [5]
 Whether George was aware of our rule is not relevant. At the time her notice of appeal was filed, it was timely under the law of this circuit. Nothing more is required
 
 
 [6]
 We note that, under the dissent's theory, this would mean that whenever we change an applicable time limit that is jurisdictional in nature, any case that does not meet the new requirement must be dismissed so long as it is still pending at some level in the federal courts. We do not even consider the possible effect on cases that are no longer pending but might be subject to reopening by one means or another
 
 
 [7]
 In fact, in its recent decision in Hughes Aircraft Co., v. U.S., ex rel. Schumer, --- U.S. ----, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), the Supreme Court suggested that this court has previously gone too far in concluding that "there is a strong presumption in favor of retroactivity for jurisdictional statutes." Id. at ----, 117 S.Ct. at 1878. The Court stated that the "only 'presumption' mentioned in [Landgraf ] is a general presumption against retroactivity. The fact that courts often apply newly enacted jurisdiction-allocating statutes to pending cases merely evidences certain limited circumstances failing to meet the conditions for our generally applicable presumption against retroactivity...." Id
 
 
 [8]
 While the Court suggested later in its opinion that its ruling would have been the same even if there had been a change in the law, that statement is clearly dictum. Budinich, 486 U.S. at 202, 108 S.Ct. at 1721. The case the Court decided involved the converse question
 
 
 [9]
 The three-prong test outlined in Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is used to determine whether decisions are applied retroactively or prospectively. The test was originally applied on a case by case basis, but now if the new rule is applied in the case in which it was announced, it must be applied to all pending cases. Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97, 113 S.Ct. 2510, 2518, 125 L.Ed.2d 74 (1993); James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 541, 111 S.Ct. 2439, 2446-47, 115 L.Ed.2d 481 (1991). We have continued to apply the Chevron test as so modified. See, e.g., Holt v. Shalala, 35 F.3d 376, 380 (9th Cir.1994)
 
 
 [10]
 See discussion infra at 1401-02
 
 
 [11]
 See Holt, 35 F.3d 376, discussed infra at 1401-02
 
 
 [12]
 The Court again reiterated the quoted statement in one of its most recent decisions discussing retroactivity. Hughes Aircraft Co. v. United States ex rel. Schumer, --- U.S. ----, ----, 117 S.Ct. 1871, 1878, 138 L.Ed.2d 135 (1997) (stating that statutes that "affect only where a suit may be brought, not whether it may be brought at all .... even though phrased in 'jurisdictional terms,' [are] as much subject to our presumption against retroactivity as any other")
 
 
 [13]
 An example of the type of case that is subject to the rule that a jurisdictional holding must ordinarily be made retroactive is our decision in Austin v. Honolulu, 840 F.2d 678 (9th Cir.), cert. denied, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). There, we held that because the petitioner's inverse condemnation claim had not been litigated in the state courts, it was not ripe and could not be heard in the federal courts. Id. at 682. Because we did not have jurisdiction to hear a claim that was not ripe, we were required to apply the holding retroactively. Id. However, like the petitioner in Firestone, the litigants in Austin were free to have the merits of their claim addressed in the federal courts at a later time. Id. at 682
 
 
 [14]
 Although statutes of limitations are not jurisdictional, courts have similarly refused to apply new rules shortening time periods for filing actions retroactively. The new limitations periods have never been applied so as to forfeit rights of persons who at the time of the new rule's adoption had claims that were still timely under the previously applicable time limits, but that would be foreclosed if the new rule were to be applied retroactively. See, e.g. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 608, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987) (declining to apply new shortened statute of limitations period to case where action would be barred as untimely although prior precedent allowed for a longer limitations period); Usher v. City of Los Angeles, 828 F.2d 556, 560-61 (9th Cir.1987) (declining to apply new shortened statute of limitations period rigidly when prior cases permitted longer period)
 
 
 [15]
 Our answer is equally applicable to both civil and criminal appeals. Under the dissent's analysis, we would be required to dismiss criminal appeals filed within the time we had declared to be proper, and criminal defendants caught in our trap would not be able to appeal from their convictions or sentences, no matter how unfair or unlawful
 
 
 [16]
 As we stated earlier, Budinich, on which the dissent relies heavily, did not involve a change in the prior law. The Fifth and Federal Circuit cases cited by the dissent are also inapplicable; they too do not involve changes to established rules. In United States v. Holmberg, 19 F.3d 1062 (5th Cir.), cert. denied, 513 U.S. 986, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994), the court was faced with the question of whether the service requirements of the Suits in Admiralty Act (SAA) were superseded by those in the Federal Rules of Civil Procedure. The court decided that they were not. Holmberg filed suit in the district court in and served the Attorney General and the United States Attorney, 103 and 106 days later, respectively. The government sought to have the action dismissed for failure to serve "forthwith" as required by the SAA. Holmberg argued that he had complied with the Federal Rules of Civil Procedure which require service within 120 days. Id. at 1064. In dismissing the action, the court held that the "forthwith" service requirement was a condition of waiver of sovereign immunity and thus was controlling. Id. at 1065. That case is markedly different from the one before us. In Holmberg, no authority supported petitioner's position and the court's holding did not constitute a departure from prior precedent. The court simply rendered a run-of-the-mill legal interpretation regarding a jurisdictional question; no change in pre-existing law was involved. Similarly unhelpful to the dissent is the Federal Circuit's decision in UNR Industries, Inc. v. United States, 962 F.2d 1013 (Fed.Cir.1992) (en banc). At issue there was 28 U.S.C. § 1500 which confers jurisdiction on the court of claims in cases in which the matter is not before any other court. Petitioner argued that the statute applied only to cases pending in other courts on the day that the Court of Claims entertained the motion to dismiss. The Court of Claims disagreed. It expressly refused to "engraft another exception" on the statute, in other words, to create a new rule. Id. at 1021. The Court of Claims concluded that under its governing statute it was without jurisdiction over the claims. Although the dissent correctly notes that the Federal Circuit foreclosed several judicially-created exceptions to the rule, none of them applied to petitioners and no prior rule that governed petitioners' conduct was changed to their detriment, at least insofar as was relevant to any issue in the case before the court
 
 
 [17]
 We were required to decide whether the Court's decision in Shalala v. Schaefer, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), must be applied retroactively because, for reasons not pertinent here, the Supreme Court had not itself decided the question
 
 
 [18]
 Even were we to look to George's conduct, however, we could not look past the fact that her filing complied with the law of the circuit as of the time she filed. We do not examine why lawyers follow the rules or why they timely file. Indeed, our concern ordinarily is precisely the opposite
 
 
 [19]
 Even if we could do so mechanically, such a survey could not solve either the analytical or the practical problems inherent in the approach suggested by the dissent. For example, how many individuals would have to have acted in conformance with the former rule before retroactive application is barred? If none, the question is, of course, irrelevant. If one (George) is not enough, how about two? If not two, what number would be necessary? Or what percentage? The dissent offers us no guidance
 
 
 [20]
 We refer here to the basic time-limit rule and not to the separate provision allowing a district judge to extend the time for appeal for an additional period for "excusable neglect." Fed. R.App. P. 4(a)(5). It is, of course, in the application of the separate provision that subjective considerations are appropriate and that an examination of actual reliance is properly undertaken. The reliance issue does not arise, however, if an individual's filing is timely under the basic rule, as George's was here. For that reason we do not reach the question, discussed in Section IV of the dissent, of actual reliance under Federal Rule of Appellate Procedure 4(a)(5)
 
 
 [21]
 We have considerable difficulty with the dissent's conclusion that "fundamental principles of fairness" also weigh heavily on the side of appellees because they are entitled to be "freed of the appellant's demands" within 30 days. We do not consider that the extra seven days afforded George for purposes of appeal placed any great strain on the public-official defendants, particularly since we had published our holding that the time for appeal in Northern Mariana cases was 37 days instead of 30 several years earlier
 
 
 [22]
 The dissent cites no authority for its theory that the rule disfavoring retroactivity is applicable only in statutory and regulatory cases, and not with respect to judicially adopted rules, and we see no justification for drawing any such distinction
 
 
 [1]
 A review of the district court dockets for Guam and the Northern Mariana Islands indicates that George is the only litigant to cite our erroneous footnote in Mendiola for the proposition that appellants from those districts have a seven-day extension for filing notices of appeal. It is undisputed that George is the only litigant whose appeal will be affected by our decision today
 
 
 [2]
 Mendiola involved a criminal appeal. Fed. R.App. P. 4(b) requires that a notice of appeal in a criminal case be filed within 10 days of the entry of the judgment. Although Mendiola's conviction was entered on January 10, 1991, he did not file his notice of appeal until January 24, 1991, 14 days later. Mendiola's notice of appeal was thus untimely under Fed. R.App. P. 4(b)
 
 
 [3]
 See also United States v. Holmberg, 19 F.3d 1062, 1065 (5th Cir.1994) (quoting this portion of Firestone in applying its jurisdictional decision retroactively and rejecting the argument that the announcement of "a new rule" required prospective application)
 
 
 [4]
 The majority casts aside this portion of the Supreme Court's opinion in Budinich by labeling it "clearly dictum." (See maj. op. at 1398 n. 8.) We are not certain the majority is correct on this point. The petitioner in Budinich had argued, inter alia, that an additional reason to apply the new jurisdictional decision prospectively was that it "constitute[d] a significant change in the law." Budinich, 486 U.S. at 203, 108 S.Ct. at 1722. The Supreme Court unanimously rejected that argument, applying the Firestone rule "[r]egardless of whether today's decision works a change." Id. That sounds like a holding to us. Even if this statement is dictum, though, that is hardly a reason to blindly ignore the Supreme Court's analysis
 
 
 [5]
 In a footnote at the end of the opinion, the Court noted:
 Two other Courts of Appeals that have overruled their precedent and held that orders denying disqualification motions are not immediately appealable have similarly made their decisions prospective only and therefore reached the merits of the disputes before them. To the extent that the rationales of those cases would allow a court to agree to decide the merits of a case over which it is without jurisdiction, we respectfully disagree.
 Firestone, 449 U.S. at 379 n. 15, 101 S.Ct. at 677 n. 15 (citations omitted).
 
 
 [6]
 The majority, in its attempt to distinguish Firestone and Budinich, makes much of the fact that those cases dealt with the jurisdictional requirement that a judgment be final before it can be appealed rather than the jurisdictional requirement that an appeal be filed in a timely manner (see maj. op. at 1397-98). It goes without saying that the finality requirement under 28 U.S.C. § 1291, like the timeliness requirement, is mandatory and jurisdictional. Behrens v. Pelletier, --- U.S. ----, ----, 116 S.Ct. 834, 838, 133 L.Ed.2d 773 (1996). That is all the similarity that is required
 
 
 [7]
 The majority's characterization of our footnote in Mendiola makes it sound like we "announced" this supposedly new "rule" as the culmination of a significant legal undertaking. (See maj. op. at 1395, 1396.) The introduction of this erroneous interpretation of Ninth Circuit Rule 26-1 into our jurisprudence was hardly so grandiose. Our "announcement," including discussion and analysis, constituted a two-sentence footnote in a 13-page opinion on issues unrelated to the timeliness of appeals. Perhaps "whispered" would have been a more appropriate verb to describe the introduction of this new "rule."
 
 
 [8]
 We were faced with a similar Hobson's choice in Holt v. Shalala, 35 F.3d 376 (9th Cir.1994). In Holt, a claimant seeking attorney's fees in a Social Security benefits case, relying on the "commonly understood" procedure in federal court, did not apply for fees until she actually received the benefits she had been awarded. Id. at 378. After the Government appealed the district court's award of attorney's fees to Holt, the Supreme Court decided Shalala v. Schaefer, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), holding that the 30-day time limit for applying for attorney's fees in cases like Holt's began to run when the claimant was ordered relief, not when she actually received the benefits. At the time Holt applied for attorney's fees, however, she could not have applied for them earlier because the district court would have dismissed the application as premature under existing Ninth Circuit precedent. Id. at 381. Those litigants falling into the gap between the Ninth Circuit rule and the Supreme Court's contrary decision in Schaefer had no choice when they acted as they did
 
 
 [9]
 For much the same reason, we do not agree that the three-factor analysis constructed in Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), should be applied to determine the retroactivity of a jurisdictional decision. In Chevron itself, the Supreme Court was faced with a change in the law involving an intervening ruling on the interpretation of the Outer Continental Shelf Lands Act, a statute. Id. at 98-99, 92 S.Ct. at 350-351. The Supreme Court's use of the Chevron factors in evaluating the retroactivity question presented in Northern Pipeline was appropriate given the unique circumstances of the case. The Court has never returned to the Chevron factors in analyzing the retroactivity of a jurisdictional decision in the more run-of-the-mill jurisdictional cases like Firestone and Budinich. It is likewise not appropriate to apply the Chevron factors here