**Paul FELZEN, Trustee of Louise Laskin Trust—1991, and Sandra Esner, Plaintiffs-Appellees,**

**v.**

**Dwayne O. ANDREAS, et al., Defendants,**

**California Public Employees' Retirement System and Florida State Board of Administration, Objectors-Appellants.**

No. 97–2829.

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 19, 1997.

Decided Jan. 21, 1998.

Terry Rose Saunders (submitted), Chicago, IL, Robert M. Roseman, Spector & Roseman, Philadelphia, PA, for Plaintiff-Appellee Felzen.

Terry Rose Saunders (submitted), Chicago, IL, Fred Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for Plaintiff-Appellee Esner.

James E. Peckert, A. James Shafter, Kehart, Shafter, Hughes & Webber, Decatur, IL, for Defendant Archer–Daniels–Midland Co.

Mark C. Hansen, Kellogg, Huber, Hansen & Todd, Washington, DC, for Appellants California Public Employees Retirement Systems, Florida State Board of Administration.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

"The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled. The Court of Appeals suggested that there may be exceptions to this general rule, primarily 'when the nonparty has an interest that is affected by the trial court's judgment.' We think the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." *Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 587–88, 98 L.Ed.2d 629 (1988) (citations omitted). With these words the Supreme Court held that a person adversely affected by the settlement of a class action may appeal from the consent decree based on that settlement only if he has intervened as a party. See also Fed. R.App. P. 3(c): "A notice of appeal must specify the *party or parties* taking the appeal by naming each appellant in either the caption or the body of the notice of appeal." (Emphasis added.) Following *Marino* we held that a class member in an action under Fed. R. Civ. P. 23 who has not become a party may not appeal from an order granting summary judgment to the defendant. *In re Brand Name Prescription Drugs Antitrust Litigation,* 115 F.3d 456 (7th Cir.1997). Today we consider another proposed exception to the rule stated in *Marino.*

Courts have disagreed for several decades about whether class members (and shareholders, their counterparts in derivative actions under Rule 23.1) must intervene as parties in order to appeal from adverse decisions. See Comment, *The Appealability of Class Action Settlements by Unnamed Parties,* 60 U.Chi.L.Rev. 933 (1993). Until *Marino* this circuit permitted class members and stockholders to appeal, whether or not they had intervened, provided they had informed the district court of their objections to the decision that disadvantaged them. See *Research Corp. v. Asgrow Seed Co.,* 425 F.2d 1059 (7th Cir.1970) (class action); *Tryforos v. Icarian Development Co.,* 518 F.2d 1258, 1263 n. 22 (7th Cir.1975) (shareholders' derivative suit). We held in *Brand Name Prescription Drugs* that in light of *Marino* and *In re VMS Limited Partnership Securities Litigation,* 976 F.2d 362 (7th Cir.1992), *Asgrow Seed* is no longer authoritative. 115 F.3d at 458. But two shareholders who have appealed from the district court's approval of a settlement in this derivative action ask us to apply *Tryforos* notwithstanding intervening precedent and the language of Rule 3(c).

█ *Tryforos* did not analyze the question now before us—whether shareholders who are not parties to a Rule 23.1 action nonetheless may appeal—but stated that their right to so do is "clear". Footnote 22 in *Tryforos* cites one case from the 1940s that permits such appeals, but that opinion did not give reasons. (*Tryforos* also cites one district court opinion from the 1960s, an odd reference for a rule of appellate jurisdiction.) An unexplained practice does not offer shelter from a later opinion of the Supreme Court holding that only parties may appeal, and withdrawing from the appellate courts any exception-making power. The two shareholder-appellants offer a number of arguments in support of appeal without intervention that boil down to a claim that erroneous decisions should be reversed, but arguments of this stripe do not justify omitting the step of intervening as a party. A court of appeals is not an ombudsman. Suppose the settlement of a derivative action induces the corporation to fire its CEO, or to curtail its purchases of fax machines, or to choose a different law firm. The affected employees, vendors, and lawyers could not appeal just because they believed the settlement improvident or the judge's action in approving it legally erroneous. Only parties may appeal. So too with shareholders, who have no more right to speak for the firm or control its litigation decisions than bondholders or banks or landlords, all of whom have contractual interests that may be affected by litigation. It may be, as appellants stress, that some district judges would not be receptive

to attempts to intervene for the purpose of appeal, but the Supreme Court spoke to this in *Marino* when observing that a denial of a motion to intervene is itself appealable.

■ According to appellants, *Brand Name Prescription Drugs* did not actually jettison the approach of *Asgrow Seed* even for class actions. The question at issue in *Brand Name Prescription Drugs* was whether class members (other than the named representatives) could appeal from an order granting summary judgment, while *Asgrow Seed* and today's case involve an appeal from an order approving a settlement. *VMS Limited Partnership*, while dismissing the appeal at hand, remarked in a footnote that the decision did not disturb *Asgrow Seed*. 976 F.2d at 368 n. 8. That is technically so; neither *VMS Limited Partnership* nor *Brand Name Prescription Drugs* involved an appeal from an order approving a settlement. But the distinction is inconsequential for purposes of Rule 3(c), the rationale of *Marino*, and the rationale of *Brand Name Prescription Drugs*: that the court should not "fragment the control of the class action" (115 F.3d at 457) by allowing class members to usurp the role of the class representative without persuading the district judge that the representative is unfit or unfaithful, or that subclasses should be created. See also *Shults v. Champion International Corp.*, 35 F.3d 1056, 1060–61 (6th Cir. 1994); *Gottlieb v. Wiles*, 11 F.3d 1004, 1010–12 (10th Cir.1993). Lest doubt linger, we now formally overrule *Asgrow Seed* and any other case in this circuit (including *Armstrong v. Board of School Directors*, 616 F.2d 305, 327–28 (7th Cir.1980), and *Patterson v. Stovall*, 528 F.2d 108, 109 n. 1 (7th Cir.1976)) that permits non-parties to appeal from a decision of any kind in a class action.

Well, then, is a shareholders' derivative action under Rule 23.1 different from a class action under Rule 23 in a way that permits appeal by non-parties? Not so far as Rule 3(c) or *Marino* is concerned. Although there are differences between class actions and derivative suits, these cut against the appellants' position. All class members are identical in entitlement to litigate; which injured persons become the representatives, and which the "mere" class members, is to a degree fortuitous and to a degree dependent on the entrepreneurial activity of the class counsel. It is the fact that each class member has a real grievance with the defendant that sets up at least an equitable argument for a class member who wants to appeal. But in a shareholders' derivative action, the individual investor is not an injured party and is not entitled to litigate. A derivative suit is brought by an investor in the corporation's (not the investor's) right to recover for injury to the corporation. *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158 (7th Cir. 1996); *Kagan v. Edison Brothers Stores, Inc.*, 907 F.2d 690 (7th Cir.1990). The corporation obtains the damages; the investor-plaintiffs just get the ball rolling after the fashion of a *qui tam* action. Only when the corporation's board defaults in its duty to protect the interests of the investors is this step permitted, and even then many states permit the board to regain control of the litigation following a special investigation. See *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* §§ 7.01, 7.03, 7.05 (1992). If in the course of managing or settling derivative litigation investors receive new injury, they do so only because the corporation becomes worse off—but loss to the corporation does not permit stockholders to sue directly. See *Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333 (7th Cir.1989). Once again the corporation holds the legal claim, and it acts through the board of directors. Stockholders may *replace* the board if dissatisfied with its performance, but they may not *displace* the board in litigation. So it cannot be surprising that stockholders other than the named plaintiffs are not treated as parties in derivative litigation—their citizenship is ignored when determining diversity, see *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), and they are not allowed to opt out. Corporate management may affect the interests of stockholders without notifying them or obtaining their consent; by investing in stock, they placed their funds at the management's disposal and obtained, in exchange, the right to choose future managers. Shareholders

have no more the attributes of parties when managers settle derivative litigation than when managers settle antitrust litigation. (This particular derivative suit arose out of claims that managers of Archer Daniels Midland Co. conspired with rival sellers and thus exposed the firm to criminal and treble-damages liability for conspiracy in restraint of trade.)

Rule 23.1 provides for notice to shareholders only in the event of dismissal or settlement, so that other investors may contest the faithfulness or honesty of the self-appointed plaintiffs; we do not doubt that this monitoring is often useful and that intervention to facilitate an appeal could be justified. Many thoughtful students of the subject conclude, with empirical support, that derivative actions do little to promote sound management and often hurt the firm by diverting the managers' time from running the business while diverting the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit. Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan. L.Rev. 497 (1991); Reinier Kraakman, Hyun Park & Steven Shavell, *When are Shareholder Suits in Shareholder Interests?*, 82 Geo. L.J. 1733 (1994); Roberta Romano, *The Shareholder Suit: Litigation Without Foundation?*, 7 J.L. Econ. & Org. 55 (1991); Mark L. Cross, Wallace N. Davidson & John H. Thornton, *The Impact of Directors' and Officers' Liability Suits on Firm Value*, 56 J. Risk & Insurance 128 (1989); Daniel R. Fischel & Michael Bradley, *The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis*, 71 Cornell L.Rev. 261 (1986). The two shareholder-appellants in this case believe that the modest settlement, half of which will be paid to counsel, exemplifies this problem. Their failure to become parties prevents us from considering this contention, for the possibility that a district court's judgment is erroneous does not dispense with the need for an appeal by a party.

■ One court of appeals has held, despite *Marino*, that a shareholder need not become a party in order to appeal from the final decision in derivative litigation. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1307–10 (3d Cir.1993). The third circuit conceived of the question as whether the shareholder has standing, which is misleading. Standing means injury in fact, and a reduction in the market price of one's stock is injury. Parties are a subset of injured persons. Equating injury with party status is exactly the approach disapproved by *Marino*. The third circuit thought that shareholders in derivative actions should be treated like class members in class actions, and it permitted the shareholders to appeal because it permits class members to appeal. 2 F.3d at 1309–10; see also *Carlough v. Amchem Products, Inc.*, 5 F.3d 707, 714 (3d Cir.1993). One does not follow from the other; for reasons we have discussed, shareholders have the weaker claim. But in this circuit, which requires class members to intervene if they want to appeal, similar treatment of shareholders is ordained. We overrule *Tryforos* to the extent it permits non-party shareholders to appeal in actions under Rule 23.1, and we disagree with the conclusion of *Bell Atlantic*.

■ Appellants tell us that they relied on *Asgrow Seed* and *Tryforos* when deciding not to intervene as parties and implicitly ask us to defer the effect of any decision to overrule their holdings. But "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981).

■ Notwithstanding *Firestone,* the ninth circuit recently refused, on equitable grounds, to apply to pending cases a decision overruling a jurisdictional precedent. *George v. Camacho*, 119 F.3d 1393 (9th Cir. 1997) (en banc). *George* stated that despite the sweep of its language *Firestone* should be confined to situations in which the disappointed appellant has some later opportunity to present the claims to the court of appeals. A panel of this court reached the same conclusion in *Snyder v. Smith*, 736 F.2d 409, 415 (7th Cir.1984): "In [*Firestone*], the court of appeals held that an order denying a motion to disqualify counsel was not appealable prior to final judgment but, because its holding

was contrary to precedent, it determined the merits of the order. The Supreme Court held that when an appellate court finds an order interlocutory and nonappealable, the court must dismiss the appeal. The Court did not address the issue of whether an appellate court must dismiss the appeal where a party who relies on a jurisdictional ruling is, under a subsequent decision, foreclosed from ever raising his issues in the appellate court. Thus, *Firestone* does not require this court to dismiss the appeal." When deciding whether to dismiss an appeal in light of new precedent, we concluded in *Snyder,* a court of appeals should look not to *Firestone* but to *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which gives a dominant role to equitable interests such as reliance on precedent.

Cases decided by the Supreme Court since *Snyder* require us to proceed differently. *Chevron* has been overruled. *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). The second court no longer considers whether application of the new rule would be inequitable or undermine reliance interests. Instead, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Harper,* 509 U.S. at 97, 113 S.Ct. at 2517. This language holds out the option of announcing a rule with wholly prospective force, inapplicable to the parties in the case that announces the rule. But a second line of cases, including *Firestone,* withholds the option of complete prospectivity when the rule concerns jurisdiction. Seven years after *Firestone* (and four years after *Snyder*) a litigant asked the Supreme Court to make a ruling prospective in order to prevent a "significant change in the law" from knocking out appellate jurisdiction. The Court declined. *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 203, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988) (citing and quoting from *Firestone*). *Budinich,* like *Snyder, George,*

and the case now at hand, involved an appeal from a final judgment; the holding in *Budinich* meant that the losing party could *never* appeal, a conclusion that washes away the distinction we drew in *Snyder.* Later the same Term, the Court reiterated the point in language equally pertinent today:

> Our agreement with the [court of appeals'] conclusion that it lacked jurisdiction, compels us to disapprove of its decision to reach the merits anyway "in the interest of justice." 822 F.2d at 1559. "Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon v. Sill,* 8 How. 441, 449 (1850). See also *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379–380 (1981).... The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases. Parties often spend years litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction.... Such situations inhere in the very nature of jurisdictional lines, for as our cases aptly illustrate, few jurisdictional lines can be so finely drawn as to leave no room for disagreement on close cases. See, *e.g., K mart Corp. v. Cartier, Inc.,* 485 U.S. 176 (1988); *United States v. Hohri,* 482 U.S. 64 (1987).

*Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). The proposition that "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists" requires us to overrule *Snyder* and disagree with *George.* Jurisdiction means adjudicatory power. Equitable considerations are altogether irrelevant when a court lacks adjudicatory power. Cf. *Landgraf v. USI Film Products,* 511 U.S. 244, 274, 114 S.Ct. 1483, 1501–02, 128 L.Ed.2d 229 (1994) (pointing out that statutes repealing grants of jurisdiction apply to pending cases, notwithstanding reliance interests); *Yang v. INS,* 109 F.3d 1185 (7th Cir.1997). If the shareholders had appealed to the House of

Lords, that tribunal would have dismissed the appeal out of hand. An appeal by non-parties is no different in effect.

Because this opinion overrules some of our decisions and creates a conflict among the circuits, it was circulated before release to all judges in active service. See Circuit Rule 40(e). No judge favored hearing the case en banc.

The appeal is dismissed for want of jurisdiction.