# United States Court of Appeals
## For the First Circuit

No. 00-1503

MICROSYSTEMS SOFTWARE, INC., ET AL.,
Plaintiffs, Appellees,

v.

SCANDINAVIA ONLINE AB, ET AL.,
Defendants, Appellees.

────────────────────────

WALDO JAQUITH, LINDSAY HAISLEY, AND BENNETT HASELTON,
Appellants.

────────────────────────

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Edward F. Harrington, U.S. District Judge]

────────────────────────

Before

Selya, Circuit Judge,
Wallace,* Senior Circuit Judge,
and Tauro,** District Judge.

────────────────────────

Christopher A. Hansen, with whom Sarah R. Wunsch, David L. Sobel, and Jessica Litman were on brief, for appellants.
    Charles R. Nesson, Lawrence Lessig, Jonathan L. Zittrain, and Diane Cabell on brief for themselves as amici curiae.
    Andrew Grosso on brief for Association for Computing Machinery Committee on Law and Computing Technology, amicus curiae.
    Irwin B. Schwartz, with whom William C. Nystrom, Colleen C. Cook, and Schwartz and Nystrom, LLC were on brief, for plaintiffs-appellees.

────────────────────────

September 27, 2000

────────────────────────

_____
*Of the Ninth Circuit, sitting by designation.
**Of the District of Massachusetts, sitting by designation.

**SELYA, Circuit Judge.** This appeal trails in the wake of a permanent injunction entered by the United States District Court for the District of Massachusetts that restrained the named defendants — Eddy L.O. Jansson, Matthew Skala, and the companies that host their respective web pages (Scandinavia Online AB and Islandnet.com) — and "their agents, employees, and all persons in active concert or participation" with them from publishing or otherwise using a bypass code known as "cp4break.zip" or "cphack.exe." The named defendants stipulated to the entry of the injunction, but three nonparties — Waldo Jaquith, Lindsay Haisley, and Bennett Haselton — now attempt to appeal. They claim to have copied the proscribed code from the named defendants' web pages and assert that the injunction impermissibly interferes with their right to continue posting it on their "mirror sites."

Although this proceeding takes place against the futuristic backdrop of cyberspace, its resolution lies in traditional principles of standing. Application of those principles requires us to terminate the attempted appeal. Consequently, we have no occasion to reach the tangled issues of copyright and First Amendment law that simmer beneath the surface of the appellants' plaints.

## I.  BACKGROUND

The plaintiffs, Microsystems Software, Inc. and Mattel, Inc. (collectively, Microsystems), developed and distributed "Cyber Patrol" — a blocking device coveted by parents who wish to prevent their children from roaming into salacious Internet venues. This software program contains a secret list of objectionable web sites and, once installed, prevents computer users from accessing those sites.

It is said that every action produces an equal, yet opposite, reaction. So it was here: shortly after Microsystems introduced Cyber Patrol, Jansson and Skala reverse-engineered it and wrote a bypass code that enabled users not only to thwart the program but also to gain access to the list of blocked sites.[1] They then posted the bypass code on their own web sites and gave blanket permission for others to copy it. The appellants took advantage of this offer.

Microsystems was not pleased. On March 15, 2000, it brought suit seeking injunctive relief against the defendants

---

[1]"Reverse engineering" involves gaining access to the functional elements of a software program. Methods of reverse engineering include observing the program in operation, performing a static or dynamic examination of the individual computer instructions contained within the program, and using a program known as a disassembler to translate the binary machine-readable object code that runs on the computer into the human-readable words and symbols known as source code. See generally Sony Computer Entertainment, Inc. v. Connectix Corp., 203 F.3d 596, 599-600 (9th Cir. 2000), petition for cert. filed, 69 U.S.L.W. 3023 (U.S. June 30, 2000) (No. 00-11).

and "those persons in active concert or participation with them." Microsystems complained that it was suffering irreparable injury because "[m]ultiple individuals throughout the United States and the world . . . have downloaded, copied and created 'mirror' Web sites" revealing the bypass code. When the district court issued a temporary restraining order two days later, Microsystems e-mailed copies of it, along with sundry supporting documents, to various persons (including the appellants). Its cover letter stated in pertinent part:

> On March 17, 2000, United States District Judge Edward Harrington entered a temporary restraining order . . . prohibiting any further publication of "CP4break.sip" or cphack.exe" or any derivative thereof, which likely violate United States copyright laws . . . It has come to our attention that your Web hosting service or Web site is publishing one or both of those prohibited files. This letter and the enclosed Word documents and *uni files will place you on notice of Judge Harrington's order.

Microsystems also served the appellants with subpoenas directing them to disclose information concerning the identity of "[e]ach and every person who produced, received, viewed, downloaded or accessed [the bypass code] or any derivative thereof from your Web site or Web site hosting service."

The appellants promptly removed the bypass code from their web sites. They then filed special appearances in the pending case and, without submitting to the court's

-5-

jurisdiction, moved to quash the subpoenas. They also proffered oppositions to the pending motion for preliminary injunction. Notably, however, they did not move to intervene.

On March 24, the district court granted the motion to quash. Three days later, the court held a hearing on the motion for preliminary injunction. At that session, Microsystems advised the court that it had reached an accord with the named defendants and proffered a proposed final decree that purported to prohibit the defendants and those persons "in active concert" with them from posting the bypass code. Notwithstanding the appellants' nonparty status, the district court allowed them to argue in opposition to the entry of the injunction and to file a supplemental memorandum. The appellants submitted this memorandum on March 28. Later that day, the court entered the permanent injunction, accompanying it with findings of fact and conclusions of law.[2]

Microsystems lost no time in furnishing the appellants with notice of the injunction. The appellants unsuccessfully sought a stay — the district court denied it, declaring that they had "no standing to pursue any appeal . . . in view of the

---

[2]The permanent injunction, together with certain comments of the district court, appears in the official reporter. See Microsystems Software, Inc. v. Scandinavia Online AB, 98 F. Supp. 2d 74 (D. Mass. 2000). The court's findings of fact and conclusions of law are not reported.

fact that they ha[d] never intervened in the case" — and simultaneously filed a notice of appeal.

## II. ANALYSIS

The existence _vel_ _non_ of appellate standing calls for a quintessentially legal judgment, to be made without deference to the trial court's view. _See_ _In re Cusumano_, 162 F.3d 708, 713 (1st Cir. 1998); _see_ _also_ _New Hampshire Right to Life Political Action Comm._ v. _Gardner_, 99 F.3d 8, 12 (1st Cir. 1996) (applying de novo review to trial court's standing determination). Because standing is a sine qua non to the prosecution of a suit in a federal court, the absence of standing sounds the death knell for a case. _See_ _Sea Shore Corp._ v. _Sullivan_, 158 F.3d 51, 54 (1st Cir. 1998). The same holds true for appeals: if the putative appellants lack standing to appeal, the only role for the appellate court is to memorialize that fact and simultaneously terminate the proceeding. _See_ _Warth_ v. _Seldin_, 422 U.S. 490, 498-99 (1975); _United States_ v. _AVX Corp._, 962 F.2d 108, 113 (1st Cir. 1992).

As a general rule, only parties to a civil action are permitted to appeal from a final judgment. _See_ _Marino_ v. _Ortiz_, 484 U.S. 301, 304 (1988) (per curiam). The Supreme Court, in its most recent pronouncement on the subject, has described this rule as "well settled." _Id._ History confirms the accuracy of

that description.  See, e.g., Karcher v. May, 484 U.S. 72, 77 (1987); United States ex rel. Louisiana v. Jack, 244 U.S. 397, 402 (1917); Ex parte Leaf Tobacco Bd. of Trade, 222 U.S. 578, 581 (1911) (per curiam); Ex parte Cockcroft, 104 U.S. (14 Otto) 578, 578-79 (1882); Ex parte Cutting, 94 U.S. (4 Otto) 14, 20-21 (1877); Dopp v. HTP Corp., 947 F.2d 506, 512 (1st Cir. 1991).

For purposes of the "only a party may appeal" rule, the term "party" includes not only those who are parties in the case when judgment is entered, but also those who properly become parties (as, say, by intervention).  See Marino, 484 U.S. at 304.  The term sometimes encompasses those who "have acted or been recognized as parties," but by some oversight were not formally made parties.  Ex parte Cutting, 94 U.S. at 20-21; see also  Sangre de Cristo Community Mental Health Serv. v. United States (In re Vargas), 723 F.2d 1461, 1464 (10th Cir. 1983). Finally, the term also extends, in limited circumstances, to those who were parties "to some earlier judgment called into question by the appeal." Dopp, 947 F.2d at 512.  The appellants plainly do not qualify as parties under any of these definitions.

Of course, exceptions exist to virtually every rule, and courts, from time to time, have endeavored to craft exceptions to the rule that only parties may appeal from an

-8-

adverse judgment.  By and large, the Supreme Court has been inhospitable to these endeavors.  Marino illustrates the point. In the underlying case, the Second Circuit had dismissed an appeal taken by nonparties, but suggested in dictum that there were several exceptions to the rule that only parties may appeal from an adverse judgment.  See  Hispanic Soc'y of New York City Police Dep't v. New York City Police Dep't, 806 F.2d 1147, 1152 (2d Cir. 1986).  Although the Marino Court subsequently affirmed the judgment, it took pains to add a caveat:

> The Court of Appeals suggested that there may be  exceptions to this general rule, primarily "when the nonparty has an interest that is affected by the trial court's judgment."  806 F.2d at 1152.  We think the better practice is for such a nonparty to seek intervention for purposes of appeal . . . .

484 U.S. at 304.

We believe that this message is reasonably clear. While there is an exception to the "only a party may appeal" rule that allows a nonparty to appeal the denial of a motion to intervene, see id., the situation differs when intervention is readily available.  In that event, courts are powerless to extend a right of appeal to a nonparty who abjures intervention. See Felzen v. Andreas, 134 F.3d 873, 874 (7th Cir. 1998), aff'd

<u>sub nom. by an equally divided Court</u>, <u>California Pub. Employees'</u>
<u>Retirement Sys.</u> v. <u>Felzen</u>, 525 U.S. 315 (1999).[3]

The appellants labor to convince us that, <u>Marino</u>
notwithstanding, we ought to recognize a long string of
exceptions to the rule mandating party status as a prerequisite
to an appeal. We are not persuaded. <u>Marino</u>, as we read it,
teaches that if any exceptions to the rule exist, those
exceptions are few and far between.

Turning from the general to the specific, we address
the appellants' principal arguments. First, they venerate our
statement that "when a lower court specifically directs an order
at a non-party or enjoins it from a course of conduct," the
nonparty may enjoy a right to appeal. <u>Dopp</u>, 947 F.2d at 512
(dictum). They then note that the injunction in this case
purports to bind not only the named defendants but also "those
persons in active concert or participation" with them. Using
this phrase as a springboard, they jump to the conclusion that
the injunction was specifically directed at them, and claim that
it therefore fits within the <u>Dopp</u> dictum. We reject this
construct.

---

[3]An affirmance by an equally divided court denies
precedential force to the opinion in question. <u>See</u> <u>Rutledge</u> v.
<u>United States</u>, 517 U.S. 292, 304 (1996). It does not, however,
tarnish earlier opinions.

To state the obvious, a dictum is not a holding — and the Dopp dictum may be no more than mere buznacking. We need not probe that point too deeply, however, because, even if we assume for argument's sake that the Dopp dictum has some force, the resultant exception, narrow in all events, see id. (describing exception as "isthmian"), would not apply at all in this case. The boilerplate terminology contained in the instant injunction merely parrots the language of Federal Rule of Civil Procedure 65(d).[4] So phrased, the injunction in no way attains the degree of specificity necessary to open the gates to the potential exception that Dopp envisioned. Cf. Keith v. Volpe, 118 F.3d 1386, 1391 n.7 (9th Cir. 1997) (holding that a nonparty who was haled into court to respond to a show-cause order had appellate standing in a subsequent appeal of that order).

In a related vein, the appellants assert that the lower court's findings of fact propel them into a safe harbor. In particular, they note the court's finding that "multiple individuals throughout Massachusetts and the United States downloaded, copied and created 'mirror' sites on the internet,

---

[4]That rule provides in pertinent part that all orders granting injunctive relief shall bind "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice . . . ." Fed. R. Civ. P. 65(d).

-11-

which replicated the Bypass Code," and that "many . . . did so for the avowed purpose of seeking to prevent [the district court] from awarding meaningful relief." This finding, they say, specifically directs the injunction at them. But this line of argumentation elevates hope over reason. The description "multiple individuals throughout the United States" is breathtakingly broad. There is nothing in the record that limits its application to the appellants or that aims the court's ukase in their direction.[5]

The appellants next attempt to lure us into weighing the equities of the case, asseverating that it is unfair to force them into a judicial proceeding and then prevent them from prosecuting an appeal. We have two rejoinders, either of which is fully dispositive of the matter.

First and foremost, the appellants' asseveration is a doctrinal misfit. Although it draws some sustenance from the case law, see, e.g., Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd., 205 F.3d 1107, 1113 (9th Cir. 2000), the asseveration overlooks the abecedarian principle that a court

---

[5]In mounting this argument, the appellants place great weight on Microsystems's statements and its transmission of a copy of the injunction to the appellants. But the direction of the injunction is for the district court to determine, and the statements and actions to which the appellants advert are in no way attributable to the court.

that lacks adjudicatory power has no authority over a case. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998); Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). Since standing is jurisdictional in nature, that principle dictates that where, as here, the putative appellants lack standing, the court lacks power to assay and reconcile the equities of the case. See Felzen, 134 F.3d at 877-78. Consequently, equitable considerations are immaterial to our determination of the standing issue.

Second — and equally devastating to the appellants' position — the equities do not favor permitting them to appeal. After entering the proceedings in a successful effort to quash the subpoenas that had been served upon them, the appellants did not quit the field victorious, but, rather, elected to expand their role and contest the merits of the case before the district court. At the same time, they made a strategic choice not to intervene in the proceedings. By intervening, see Fed. R. Civ. P. 24, the appellants could have become parties, entitled to both that status's benefits (including the right to appeal an unfavorable judgment) and its burdens.

In our view, the decision to forgo intervention works a forfeiture of any claim to appellate standing. Those who aspire to litigate issues cannot have it both ways: they cannot

-13-

evade potential liability by declining to seek party status and still expect to be treated as parties for the purpose of testing the validity of an ensuing decree.[6]  Cf. United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985) ("Having one's cake and eating it, too, is not in fashion in this circuit.").

Moving ahead, the appellants maintain that they should be permitted to appeal because they have an interest that is affected by the district court's judgment and they were permitted to vindicate that interest by participating in the proceedings below.  Some courts have recognized exceptions to the "only a party may appeal" rule in analogous cases.  See, e.g., Kaplan v. Rand, 192 F.3d 60, 66-67 (2d Cir. 1999).  To the extent that these cases are authority for the appellants' position, we respectfully decline to follow them.  A mere interest in the outcome of litigation will not suffice to confer

---

[6]To be sure, the appellants complain that they were put between a rock and a hard place because intervention would have forced them to waive their jurisdictional defenses and submit to the district court's jurisdiction.  But this seems to be another way of saying that they made a calculated decision that the injunction sought by Microsystems would not aggrieve them enough to warrant taking whatever risks were attendant to intervention.  There is nothing remotely unfair about being put in that position.  Litigation strategies almost always involve balancing of risk and reward, and the fundamental rationale behind the "no intervention, no appeal" rule counsels in favor of holding the appellants to the predictable consequences of their strategic choice.  See Dopp, 947 F.2d at 512; Kenny v. Quigg, 820 F.2d 665, 667 (4th Cir. 1987).

-14-

standing upon a nonparty.  See Marino, 484 U.S. at 304; Felzen, 134 F.3d at 874; J.A. Shults v. Champion Int'l Corp., 35 F.3d 1056, 1060 (6th Cir. 1994); see also Guthrie v. Evans, 815 F.2d 626, 627 (11th Cir. 1987).  As we have said, "the fact that an order has an indirect or incidental effect on a non-party does not confer standing to appeal.  If the rule were otherwise, Pandora's jar would be open, and strangers to a litigated case could pop in and out of the proceedings virtually at will." Dopp, 947 F.2d at 512.

By the same token, mere participation in the proceedings below will not suffice to confer standing upon a nonparty.  After all, the officers who became the nonparty appellants in Hispanic Society participated in the proceedings before the district court, see 806 F.2d at 1152, but the Supreme Court found that they lacked standing to appeal, see Marino, 484 U.S. at 304; see also Croyden Assocs. v. Alleco, Inc., 969 F.2d 675, 679 (8th Cir. 1992) (noting that the Marino Court did not perceive the Marino appellants' participation in the proceedings below as warranting an exception to the general rule).  Thus, we reject the appellants' claim that participation below, even if coupled with an indirect interest in the judgment sought to be appealed, confers standing.

Ably represented, the appellants take yet another tack. They remonstrate that if they are not permitted to appeal at this juncture, they will forfeit any opportunity to contest the injunction on the merits. In their view, this would deprive them of due process.

This argument has a certain superficial allure, because "the validity and terms of an injunction [ordinarily] are not reviewable in contempt proceedings." G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 34 (1st Cir. 1980). This rule applies both to those who were parties to the underlying case, see, e.g., NLRB v. Union Nacional de Trabajadores, 611 F.2d 926, 928 n.1 (1st Cir. 1979), and to nonparties in active concert or participation with the enjoined party, see, e.g., NBA Props., Inc. v. Gold, 895 F.2d 30, 33-34 (1st Cir. 1990).

The attractiveness of the appellants' argument diminishes rather rapidly, however, when one recalls that the appellants filed two memoranda with the district court and contested the merits of the injunction at a hearing. More importantly, they had every opportunity to intervene and purposefully declined to do so. In these circumstances, whatever predicament they envision is of their own construction.

Even if more were needed — and we doubt that it is — the adjudicative framework surrounding contempt proceedings

fully protects nonparties' constitutional rights. If contempt proceedings are in fact undertaken, the forum court will resolve the fact-specific question of whether the cited nonparty was in active concert or participation with the named defendant. If so, the named defendant will be deemed the nonparty's agent, and the nonparty's right to due process will have been satisfied vicariously. See Merriam, 639 F.2d at 35; Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 832-33 (2d Cir. 1930) (L. Hand, J.). If, however, the party prosecuting the contempt proceeding fails to show active concert or participation, a finding of contempt will not lie. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969); Merriam, 639 F.2d at 35.

We explain briefly why, in either of these events, due process is not at risk. Contempt proceedings operate to ensure that nonparties have had their day in court. In order to hold a nonparty in contempt, a court first must determine that she was in active concert or participation with the party specifically enjoined (typically, the named defendant). See Merriam, 639 F.2d at 35; Alemite, 42 F.2d at 832-33. This means, of course, that the nonparty must be legally identified with that defendant, or, at least, deemed to have aided and abetted that defendant in the enjoined conduct. See Merriam, 639 F.2d at 35; Alemite, 42 F.2d at 832-33. The existence of

-17-

such a linkage makes it fair to bind the nonparty, even if she has not had a separate opportunity to contest the original injunction, because her close alliance with the enjoined defendant adequately assures that her interests were sufficiently represented. See NBA Props., 895 F.2d at 33; Merriam, 639 F.2d at 37; cf. Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1945) ("[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

The coin, however, has a flip side. A nonparty who has acted independently of the enjoined defendant will not be bound by the injunction, and, if she has had no opportunity to contest its validity, cannot be found in contempt without a separate adjudication. See id.; see also Alemite, 42 F.2d at 832 (declaring that a decree which purports to enjoin nonparties who are neither abettors nor legally identified with the defendant "is pro tanto brutum fulmen," and may safely be ignored). This tried and true dichotomy safeguards the rights of those who truly are strangers to an injunctive decree. It does not offend due process.

## III.  CONCLUSION

To summarize, we hold that nonparties who have had the opportunity to seek intervention, but have eschewed that course,

lack standing to appeal.  <u>See</u> <u>Marino</u>, 484 U.S. at 304; <u>Dopp</u>, 947 F.2d at 512.  While there may be isolated exceptions to this rule — a matter on which we take no view — the instant appeal falls comfortably within the mainstream.  Because the appellants lack standing, we can go no further.

**<u>Appeal dismissed</u>.  <u>Costs in favor of plaintiffs-appellees</u>.**