Filed 3/14/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MIKE HERNANDEZ et al., | D067091 |
| Plaintiffs and Respondents, | |
| FRANCESCA MULLER, | (Super. Ct. No. |
| Plaintiff and Appellant; | 37-2008-00094395-CU-BT-CTL) |
| v. | |
| RESTORATION HARDWARE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, William S. Dato, Judge. Appeal dismissed.

Law Office of Lawrence W. Schonbrun and Lawrence W. Schonbrun for Plaintiff and Appellant.

Patterson Law Group, James R. Patterson, Allison H. Goddard; Stonebarger Law and Gene J. Stonebarger for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

In this class action, the class representatives alleged defendant Restoration Hardware, Inc. (RHI), committed numerous violations of Civil Code section 1747.08, also known as the Song-Beverly Credit Card Act. After a bench trial, the trial court found RHI was liable for as many as 1,213,745 violations of that statute and set a penalty recovery in the amount of $30 per violation, subject to RHI's right to dispute any specific claim. Under that judgment, RHI faced a total maximum liability of $36,412,350.

In posttrial proceedings, class representatives requested the court order an award of attorney fees of $9,103,087.50 (25 percent of the total maximum fund of $36,412,350 created by the judgment) to be payable to class counsel from the fund. RHI agreed it would not contest that request. Francesca Muller, a class member and the person prosecuting the present appeal, requested the court order notice of the attorney fee motion be sent to all class members. The court denied Muller's request, granted the attorney fee motion, and entered judgment in the action. Muller then filed a notice of appeal from the judgment.

Muller asserts the court erred when it declined to order that notice be given to all class members of the hearing on the attorney fee award, and that the award was calculated in violation of applicable standards and procedures. Muller also claims the court's award was an abuse of its discretion. Class representative Hernandez asserts Muller does not have standing to appeal the judgment and that the appeal should therefore be dismissed. Hernandez alternatively argues (1) no notice to the class of the attorney fee hearing was mandated and (2) the amount awarded as fees, as well as the

2

procedure employed by the trial court for determining the amount of the attorney fees award, was proper.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Class Action

Michael Hernandez filed this action in 2008 alleging defendant RHI violated Civil Code section 1747.08 by requesting and recording ZIP codes from consumers who used a credit card in purchase transactions in RHI's California retail stores. After years of litigation, the court ultimately certified the case as a class action, appointed Michael Hernandez and Amanda Georgino as class representatives (together Hernandez), and appointed Patterson Law Group and Stonebarger Law as counsel for the class.

The June 2013 notice to potential class members advised them of the pending class action and explained they had the option of (1) remaining as part of the class and being bound by the judgment, or (2) excluding themselves from the class and not being bound by any judgment. It also advised that, if they elected to remain in the class, they had the option of entering an appearance through counsel. Two weeks later, attorney Schonbrun entered an appearance in the action on behalf of Muller. However, Muller did not move to intervene in the action, or to join as an additional class representative, or to be substituted for Michael Hernandez and Amanda Georgino as class representative.

B. The Verdict and Common Fund Award

After a bench trial, the court issued its decision in favor of the class. The court found RHI committed "as many as" 1,213,745 violations of section 1747.08, subdivision

3

(a)(2), for credit card transactions that occurred during the class period because RHI requested, obtained and recorded the customer's ZIP code as part of the credit card transaction.[1]  The court also concluded the appropriate penalty under section 1747.08, subdivision (e), for each violation would be $30, for a total recovery by the class of up to $36,412,350.

Because the court's decision ordered the parties to meet and confer regarding an appropriate claims process, the parties met and agreed on a claims process, and a process for distributing the total award (the claims procedures).  The parties' stipulation proposed the final judgment award of $36,412,350 be "treated as a common fund inclusive of any attorneys' fees, costs, and class representative enhancements" subsequently ordered by the court, and also include administrative costs associated with administering the claims process.  The parties proposed that, after deduction of attorney fees, costs, and class representative enhancements, the net remaining fund (the Net Fund) would be distributed to class members as (1) a prorated share of the Net Fund up to $30 per violation cash payment to persons submitting valid claims and who elected cash payments, and (2) the "coupon option" to persons submitting valid claims (if they did not elect the cash award)

---

1       However, the court's decision specified the maximum number of violations was "subject to reduction" if information obtained during the claims process provided RHI with evidence to show that a particular credit card transaction did *not* result in a violation of section 1747.08, subdivision (a)(2), because RHI *inaccurately* recorded the customer's ZIP code.  The court accepted class counsel's suggestion that RHI could be given the opportunity to challenge an individual class member's claim during the claims process if RHI could show the ZIP code *recorded* by RHI for the particular customer did not match the customer's *actual* ZIP code.  The court ordered the parties to meet and confer "on the scope and particulars of an appropriate claims process, including a means for RHI to challenge the accuracy of any recorded ZIP codes."

for 33 percent off of an up to $10,000 purchase of nonexcluded RHI merchandise valid for one year from issuance of the coupon. The parties' proposal also contained a provision that, at the end of coupon period, if the payouts from the Net Fund in cash or from coupon savings did not exhaust the Net Fund, an additional coupon would be issued with a dollar cap sufficient to exhaust the Net Fund.

C. <u>The Attorney Fees Determination</u>

Hernandez subsequently moved for an attorney fees award seeking an award of attorney fees equivalent to 25 percent of the total judgment recovered for the class.[2] The court, although acknowledging a percentage award might ultimately be the appropriate method to calculate the fee award, also directed class counsel to supplement the motion for fees with a filing that employed a traditional "lodestar" calculation. Hernandez subsequently submitted the lodestar calculation and analysis, which showed class counsel had spent over 3500 hours, totaling nearly $2.7 million in costs advanced and fees incurred, and detailed the attorneys involved, the tasks performed, and the reasonableness of the hourly rates for those attorneys. Hernandez's submission also articulated the reasons that supported application of a "multiplier" to the lodestar calculation.

Muller, who was served with the attorney fee motions, did not file any objection contesting the propriety of the amount sought by Hernandez as attorney fees. Instead,

_____

[2] Class counsel declared RHI agreed not to oppose a court award of the requested amount as long as class counsel sought the minimum 25 percent amount and, absent that stipulation, class counsel would have requested a higher amount. Analogous "clear sailing" stipulations have been determined to be appropriate by other courts. (See, e.g., *Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 552-556.)

5

Muller filed an August 29, 2014, "Request for Clarification," asking for clarification on whether class members would receive notice of the fee application and the right to appear and comment on the application.[3] Prior to the hearing on the attorney fees, the court issued its tentative ruling determining (1) a percentage award in a "common fund" case was permitted by California law, (2) a 25 percent fee was a percentage courts use as a "starting benchmark," and (3) a fee at or above that benchmark was "particularly appropriate" considering the risks undertaken, and results obtained, by counsel in this action.

At the hearing on the attorney fee application, Muller objected that considering the attorney fees application without first giving class members notice of the fee application and the right to appear and comment on the application was a violation of class action procedures because this fee award was "a settlement as regards to the attorneys' fees . . . [because] [class] counsel and defendants negotiated a settlement on the question of attorneys' fees." Muller also argued, for the first time at the hearing, that a court must use the "lodestar multiplier approach" (rather than a percentage of the fund approach) when calculating the fee award, but did not argue the *amount* the court's tentative ruling proposed to award was excessive.

---

[3] Muller also sought clarification of whether class counsel would be required to file "lodestar information." However, the court had already ordered class counsel to file lodestar information and, on August 29, 2014, Hernandez did file and serve the required lodestar information.

D. <u>The Judgment</u>

The court's final judgment, which apparently tracked the parties' proposed claims procedures process, provided for awarding $36,412,350, to be "treated as a common fund inclusive of any attorneys' fees, costs, and class representative incentive enhancements ordered by the Court and any administrative costs associated with administering the claims process . . . ." The court awarded attorney fees of $9,103,087.50, or 25 percent of the total maximum fund of $36,412,350 created by the judgment, as well as litigation costs and class representative incentive enhancements, and directed the remainder of the fund (less administrative costs of administering the claims process) be distributed as specified by the judgment. Muller filed her notice of appeal within the time specified by law.

II

ANALYSIS

Muller raises numerous claims of alleged error in the judgment entered below. First, she claims the court could not adjudicate the attorney fee motion without first giving notice to the class of Hernandez's motion to set the appropriate attorney fee award, and giving all class members an opportunity to object to the motion, and the failure to do so in this case violated both due process protections and California's class action procedures. Second, Muller argues the court, by calculating the award based on a percentage of the common fund rather than by a properly rigorous lodestar multiplier approach, transgressed controlling California precedent. Finally, Muller argues class

7

counsel breached its fiduciary duty to the class by "negotiating" with RHI over the amount of fees to be paid by the common fund.

Hernandez contests each of Muller's claims of error. However, Hernandez raises a jurisdictional challenge to this court's ability to entertain the appeal, arguing that because Muller was neither a "party" nor "aggrieved" by the judgment, she does not have standing to pursue this appeal and the appeal must therefore be dismissed. Because this claim is jurisdictional (*Life v. County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1292, fn. 3 ["standing to appeal is jurisdictional"]; *In re Marriage of Tushinsky* (1988) 203 Cal.App.3d 136, 141-143), we begin with our analysis of whether Muller may prosecute this appeal.

A. General Principles

Only a "party aggrieved may appeal" from a judgment. (Code Civ. Proc., § 902.) As a general rule, only parties of record may appeal (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736), and the courts have interpreted section 902 to require the appellant *both* to have been a "party" below and to have been "aggrieved" by the judgment. (See, e.g., *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 ["to have standing to appeal, a person generally must be both a party of record and sufficiently 'aggrieved' by the judgment or order"] (*Marsh*).)

A class action is one prosecuted by named representative plaintiffs, who have a fiduciary responsibility to prosecute the action on behalf of the absent parties. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1434.) The class action structure relieves the unnamed class members of the burden of participating in the action, hiring counsel,

and incurring costs.  (*Ibid*.)  Indeed, "[t]he structure of the class action does not allow absent class members to become active parties, since 'to the extent the absent class members are compelled to participate in the trial of the lawsuit, the effectiveness of the class action device is destroyed.' "  (*Ibid*., fn. omitted.)  Although unnamed class members may be deemed "parties" for the limited purposes of discovery (*Southern California Edison Co. v. Superior Court* (1972) 7 Cal.3d 832, 840), unnamed class members are not otherwise considered "parties" to the litigation.  (Cf. *National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1282 ["unnamed class members do not 'stand on the same footing as named parties' "].)

B. Analysis

Hernandez argues that, because Muller is not a party, the appeal should be dismissed under *Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199 (*Eggert*).[4]  In *Eggert*, the court addressed whether an unnamed class member could appeal from a

---

[4]    Hernandez also argues the appeal should be dismissed because Muller was not "aggrieved" by any of the purported errors committed below, and the parties vigorously contest whether the "aggrieved" element is satisfied here.  It is unnecessary to address the "aggrieved" element of appellate standing, and we do not examine the bulk of the cases relied on by Muller addressing that issue, because we conclude the separate "party" element is absent here.  (See, e.g., *Marsh, supra,* 43 Cal.App.4th at p. 295 ["to have standing to appeal, a person generally must be both a party of record and sufficiently 'aggrieved' by the judgment or order"]; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 538-544 [although grandparents were aggrieved by order, grandparents' appeal dismissed because they were not parties to action]; *Rose v. Rose* (1952) 110 Cal.App.2d 812, 813 [child appealed from order denying mother's application for increased child support for child; court ordered appeal dismissed because, although child's beneficial interest in such increase was harmed by order, child "was not named as a party to the action, did not take any appropriate steps to become a party to the record, and since the court did not order her brought into the action, she has no right to appeal from the order"].)

judgment entered in the class action. There, the named plaintiff (Eggert) commenced an action against the savings and loan company on behalf of himself and some 1,500 persons who were certificate holders. The court held the suit a proper class action, and in its judgment for Eggert and the other certificate holders whom he represented decreed that they recover from the defendant over $1.8 million to be apportioned pro rata among them after deduction of expenses and fees, and reserved jurisdiction to determine the fees to be paid plaintiff's attorneys. After appointing a receiver to facilitate the collection and payment of the judgment, the court also issued an order, directed to plaintiff and all other persons interested, to show cause why it should not make an order fixing reasonable attorneys' fees. Two certificate holders appeared and objected to the amount ordered as attorneys' fees for plaintiff's attorneys, and subsequently appealed from the order rejecting their objections. (*Eggert*, *supra*, 20 Cal.2d at pp. 199-200.) The class representative moved to dismiss the appeal, and our Supreme Court granted the motion to dismiss the appeal, explaining "it is a settled rule of practice in this state that only a party to the record can appeal. [Citations.] Appellants were not named as parties to the action nor did they take any appropriate steps to become parties to the record. The fact that their names and the extent of their interest in the action appeared in an exhibit attached to the complaint and the judgment did not make them parties . . . . [Citations.] Although their attorney appeared at the hearing on the petition for the payment of the money to plaintiff's attorneys and objected to such payment, he did not ask that appellants be made parties, nor did the court order them brought into the action. [Citation.] Appellants had ample opportunity even after the court had made its orders to become parties of record by

10

moving to vacate the orders to which they objected. They could then have appealed from the order denying the motion." (*Eggert*, at p. 201.)  Accordingly, the Supreme Court ordered the appeal dismissed.  (*Ibid.*)

Eggert appears to be on "all fours" with the present action: both involved a class action; both involved a matter litigated to judgment; both involved a challenge to the postjudgment attorney fee award to the counsel for the named plaintiff; both involved appellants who were members of the class, but not named parties, and who had appeared through counsel to object to the attorney fee award; and both involved members who took no steps to be added as named plaintiffs.[5]  Accordingly, under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, we must adhere to *Eggert* and dismiss the appeal.

Muller argues we may disregard *Eggert* and entertain this appeal, but we are unpersuaded by her arguments.  Muller argues, for example, that *Eggert* was decided before the 1966 revisions to Rule 23 of the Federal Rules of Civil Procedure and those federal rules are persuasive in modern California class action jurisprudence (see, e.g., *Arias v. Superior Court* (2009) 46 Cal.4th 969, 989 [conc. opn. by Werdeger, J.]), and because *Eggert* predated those rule changes it is no longer relevant to the issue of appellate standing.  However, Muller cites no authority suggesting that changes to *federal* procedural rules for managing class actions at trial undermine the analysis of a *state*

---

5       On appeal, Muller asserts Hernandez has "ignore[d] the legal ramifications" of entering an appearance and of objecting to the attorney fees award and "never . . . provide[d] legal authority . . . for a proposition that [such actions are] insufficient to confer appellate standing."  However, we believe *Eggert does* explain the legal effect such actions have on appellate standing, and is fatal to Muller's contrary argument.

11

statute that limits the standing of parties entitled to appeal, and we are aware of no relevant authority that does so.

Muller also cites several cases in which California appellate courts stated a class member who was not a party to the action obtains appellate standing to challenge the judgment merely by interposing an objection to the judgment below. However, neither of the cases cited by Muller, *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387 and *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, made any effort to reconcile their conclusions with *Eggert*, and instead rooted their conclusions in the analysis contained in *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134 (*Trotsky*). (See *Wershba,* at pp. 235-236 [citing only *Trotsky* on issue of standing]; *Consumer Cause,* at pp. 395-396 [citing *Trotsky* and *Wershba* on issue of standing].) Accordingly, we examine *Trotsky*.

In *Trotsky*, the appellants were unnamed members of the affected class who appeared at a settlement hearing and objected to a proposed settlement of a class action lawsuit. *Trotsky*, discussing the standing to appeal issue, stated:

> "[A]ppellant is a party aggrieved, and has standing to appeal. [Citing Code of Civil Procedure section 902.] This is true even though appellant could instead have 'opted out,' I.e., requested exclusion from the judgment. [Citation.] As stated by the court in *Ace Heating & Plumbing* [*Co.*] *v. Crane* [*Co.*] [3d Cir. 1971] 453 F.2d 30, 33], deciding a similar question under rule 23 of the Federal rules of Civil Procedure,' . . . It is possible that, within a class, a group of small claimants might be unfavorably treated by the terms of a proposed settlement. For them, the option to join is in reality no option at all. Rule 23 recognizes the fact that many small claimants frequently have no litigable claims unless aggregated. So, without court approval and a subsequent right to ask for review, such claimants would be faced with equally unpalatable alternatives—

12

accept either nothing at all or a possibly unfair settlement. We conclude that appellants have standing to appeal . . . .' [Citations.] Were the rule otherwise, a class member who objected in the trial court to the terms of the settlement would be unable to secure appellate review of the court's order approving the settlement." (*Trotsky, supra,* 48 Cal.App.3d at pp. 139-140.)

Thus, *Trotsky* focused primarily on whether an objector to a settlement was "*aggrieved*" within the meaning of Code of Civil Procedure section 902, concluding objectors were aggrieved because " '[i]t is possible that, within a class, a group of small claimants might be unfavorably treated by the terms of a proposed settlement. For them, the option to join is in reality no option at all,' " and reasoning that because those claimants might be forced to choose between "equally unpalatable alternatives"—of accepting either nothing or an unfair settlement—those parties were sufficiently aggrieved for purposes of the right to appeal. (*Trotsky, supra,* 48 Cal.App.3d at pp. 139-140.) However, *Trotsky* did not examine the distinct "party" element of Code of Civil Procedure section 902, nor make any effort to reconcile its conclusion with *Eggert's* holding that unnamed class members whose only appearance was to object to the attorneys' fees had no standing to appeal because they were not "parties" and did not avail themselves of the "ample opportunity . . . to become parties of record . . . ." (*Eggert, supra*, 20 Cal.2d at p. 201.) Because *Eggert* teaches the "party" requirement of Code of Civil Procedure section 902 is not met merely because the "aggrieved" requirement of section 902 might *also* be satisfied as to a nonparty class member, we conclude *Trotsky's* analysis of standing is flawed and that *Trotsky* and its progeny (which includes both *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc., supra,* 127

13

Cal.App.4th 387 and *Wershba v. Apple Computer, Inc., supra,* 91 Cal.App.4th 224) should not be followed.

*Trotsky's* analysis is also flawed because it relied primarily on federal cases, including *Ace Heating & Plumbing Co. v. Crane Co., supra,* 453 F.2d 30, in which the federal courts concluded an objecting class member had standing to appeal without seeking to be made a party to the proceedings below.  However, it appears numerous federal courts have subsequently held that nonparty class members may *not* appeal a judgment.  (See *Croyden Assocs. v. Alleco, Inc*. (8th Cir. 1992) 969 F.2d 675, 678, 678-680 [noting the "circuits are divided on this issue, and some have inconsistent holdings"; holding nonparty class member lacks standing to appeal]; see also *Felzen v. Andreas* (7th Cir. 1998) 134 F.3d 873 [class members must intervene as parties in order to appeal from adverse decisions]; *Walker v. Mesquite* (5th Cir. 1988) 858 F.2d 1071 [nonparty class member lacks standing to appeal].)[6]  The rationale, as explained by the *Croyden* court, is

---

[6]      We acknowledge the federal decisions, even from the United States Supreme Court (compare *Marino v. Ortiz* (1988) 484 U.S. 301 [nonparty class members who did not seek to intervene may not appeal approval of settlement] with *Devlin v. Scardelletti* (2002) 536 U.S. 1 [reaching opposite conclusion without disapproving *Marino*]), are not uniform.  For example, in *Powers v. Eichen* (9th Cir. 2000) 229 F.3d 1249, the court concluded that, at least in the context of a court approval of a proposed settlement of a class action, a nonparty class member could appeal without intervening.  (*Id*. at p. 1256.)  However, the principal rationale for *Powers's* conclusion appears to have been the conclusion that conditioning the right to appeal on a class member's motion to intervene under Federal Rules of Civil Procedure Rule 24 would "create[] a procedural hurdle that would delay the ultimate resolution of the case and unnecessarily burden those involved." (*Powers,* at p. 1256.)  *Powers* ignored that permitting unnamed class members to appeal a judgment without seeking to intervene would create the *same* delays and burdens, because a judgment could be delayed and burdened by appellate challenges mounted by numerous (or, as here, over 400,000) notices of appeal by disgruntled class members.

14

threefold.  First, unnamed class members cannot represent the class absent the procedures outlined in Rule 23 because the trial court has not conducted hearings to determine whether the appellants would satisfactorily represent the interests of the other class members.  (*Croyden Associates v. Alleco, Inc., supra*, 969 F.2d at p. 678.)  Second, *Croyden* observed that unnamed class members who disagree with the class action have other adequate procedures through which their interests can be protected, pointing out that class members may move to intervene and, if their motion to intervene is denied, they may appeal that decision.  *Croyden* observed that merely objecting to the settlement did not confer standing to appeal; rather, the unnamed class member must still move to intervene.  (*Croyden*, at pp. 678-679; accord, *Felzen v. Andreas, supra*, 134 F.3d 873 [class members must intervene as parties in order to appeal from adverse decisions].)  Alternatively, a dissatisfied class member may opt out.  (*Croyden,* at p. 678.)  Finally, *Croyden* pointed out that class actions would become unmanageable and unproductive if each class member could individually appeal.  (*Ibid*.)  The purpose of class actions is to "render manageable litigation involving numerous class members who otherwise would all have access to the court through individual lawsuits" (*ibid*.) and it would defeat the purpose of instituting the litigation as a class action in the first place if any and all class members could appeal from rulings and judgments.  (*Ibid*.)  Thus, because *Trotsky* relies

Moreover, whatever merit *Powers's* rationale might have in the context of a proposed *settlement* of a class action, the present action involved a court judgment in which the amount of the recovery and the amount of the attorney fees award was not made by the parties during negotiations to which unnamed class members were not privy, but was instead made by the court as part of adversarial proceedings, which brings this action squarely within the holding of *Eggert* and also obviates one of the concerns articulated by *Powers*.  (See *Powers,* at p. 1256.)

15

on federal authority that has been at least undermined by contrary federal authority, and disregarded *Eggert's* contrary (and controlling) approach, we conclude the cases on which Muller relies should not be followed.

Even were we free to disregard *Eggert*, which we are not (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d 450), adhering to *Eggert's* approach would not leave nonparty class members without protection or appellate recourse. Under California law, where class members are given the option of opting out, they are not bound by the judgment in the class action but instead may pursue their own action. (*Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1010.) Even if they remain, California law provides that a person who is a nonparty may acquire appellate standing by intervening, and moving to vacate the judgment. (Code Civ. Proc., § 378; *Marsh, supra,* 43 Cal.App.4th at p. 295.) They may then appeal the order denying the motion to vacate. (*Eggert, supra,* 20 Cal.2d at p. 201.) Based on these rationales, Muller's argument—that merely filing a notice of appearance (and subsequently objecting to the attorney fee award) conferred standing on her to appeal from the court's judgment—must fail. Intervention in the instant action would have permitted Muller to oppose the attorney fee award *and* preserve the objectives of the class action: orderliness, efficiency, and fairness to other class members. Similarly, we do not see how intervention would fail to address the "unpalatable alternatives" that animated the *Trotsky* court. Intervention would have the effect of giving Muller a clear avenue from which to challenge the attorney fee award, because as a party Muller could not be ignored by the court, the class plaintiffs, or the class defendant; furthermore, intervention would put the class defendant

16

on notice of a possible appeal from the judgment.  Moreover, we believe a bright-line rule requiring party status to appeal a class action would be appropriate where the cost of intervention is minimal and benefits, to both the parties and to the court system, are substantial.

## DISPOSITION

The appeal is dismissed.  Class representatives shall recover costs on appeal.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

17